**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
SKYE RESENDES (SBN 278511)
*skye@consumersadvocates.com*
ALEXIS WOOD (SBN 270200)
*alexis@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**LAW OFFICES OF DANIEL G. SHAY**
DANIEL SHAY (SBN 250548)
*DanielShay@TCPAFDCPA.com*
409 Camino Del Rio South, Suite 101B
San Diego, California 92108
Telephone: (619) 222-7429
Facsimile: (619) 431-3292

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AJ REYES, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>EDUCATIONAL CREDIT MANAGEMENT CORP.,<br><br>        Defendant. | CASE NO. 3:15-cv-00628-BAS-JMA<br><br>CLASS ACTION<br><br>*REDACTED* **JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE REGARDING DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF DISCOVERY** |

**Declaration of Compliance with Meet and Confer Requirement**

On June 12, 2015, Plaintiff AJ Reyes ("Plaintiff") served his first set of discovery on Defendant Educational Credit Management Corporation ("Defendant" or "ECMC"), which included Plaintiff's Interrogatories to Defendant, Set One and Plaintiff's Requests for Documents to Defendant, Set One. Declaration of Kas L. Gallucci ("Gallucci Decl."), ¶ 2, Exs. 1 & 2. Following an extension of time to respond to discovery, on August 17, 2015, ECMC served its objections and responses to Plaintiff's discovery. Gallucci Decl., ¶ 3, Exs. 3 & 4.

On August 20, 2015, Plaintiff sent Defendant an email requesting a telephonic meet and confer conference to discuss Defendant's responses to Plaintiff's discovery. Gallucci Decl., ¶ 4. On August 26, 2015, Plaintiff sent Defendant a detailed letter outlining the discovery requests subject to Plaintiff's meet and confer, which included Interrogatory Nos. 1-10, 12-13, 15-20 and Requests for Production of Documents Nos. 1-24, 26-31, 33-35 and 37-39. Gallucci Decl., ¶ 5. On August 26, 2015, the parties conducted a lengthy telephonic meet and confer to discuss Defendant's objections and responses to Plaintiff's first set of discovery. Gallucci Decl., ¶ 6. The parties' meet and confer efforts further continued via additional phone conversations and email communications. *Id.*

On October 15, 2015, Defendant served its supplemental responses to Plaintiff's first set of discovery. Gallucci Decl., ¶ 7, Exs. 5 & 6.

On October 5, 2015, this Court granted the parties' joint request to continue the deadline for filing a joint motion for determination of discovery dispute until November 9, 2015. Dkt. No. 20. On November 9, 2015, this Court granted the parties' joint request to continue the deadline until November 16, 2015. Dkt. No. 24. On November 16, 2015, the parties jointly contacted Chambers and were granted a further extension until November 20, 2015 to file the instant motion as the parties were in the process of further narrowing the issues. Gallucci Decl., ¶ 8. Also on November 16, 2015, Defendant provided further supplemental responses to Plaintiff's Requests for

1

*Reyes v. Educational Credit Management Corp.*, No. 15cv628
REDACTED JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE REGARDING
DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF DISCOVERY

Documents. Gallucci Decl., ¶ 9, Ex. 7. On November 19, 2015, Defendant again provided third supplemental responses to Plaintiff's Requests for Documents. Gallucci Decl., ¶ 10, Ex. 8. Thus, to accommodate a review of the new documents, the parties jointly contacted Chambers to request a further extension until December 1, 2015, which was granted. Gallucci Decl., ¶ 11. Thereafter, the parties have continued to narrow the issues through follow up phone conversations and document production by Defendant. The parties were not able to resolve their disputes regarding Interrogatory No. 5, 6, 9, 12, 13, 17 and 19, and Requests for Production of Documents Nos. 14, 15, 16, 17, 18, 30, 31,33, 34, 35, 37 and 38. Gallucci Decl., ¶ 8.

2

*Reyes v. Educational Credit Management Corp.*, No. 15cv628
*Redacted* Joint Motion for Determination of Discovery Dispute Regarding
Defendant's Responses to Plaintiff's First Set of Discovery

# I.    <u>Plaintiff's Preliminary Statement</u>

"Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all." *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999); *see also A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) (ruling that "general or boilerplate objections such as 'overly burdensome and harassing' are improper-especially when a party fails to submit any evidentiary declarations supporting such objections .... [s]imilarly, boilerplate relevancy objections, without setting forth any explanation or argument why the requested documents are not relevant, are improper"). The burden is on the responding party to clarify, explain and supports its objections. *See Anderson v. Hansen*, 2012 WL 4049979, at *8 (E.D. Cal. Sept. 13, 2012).

Defendant's "responses" to each and every Request raised by Plaintiff below, assert boilerplate objections such as overbroad, unduly burdensome, harassing, oppressive and relevancy, without explaining in detail the basis for any particular objection.  For that reason, those objections should be stricken. Defendant also raised objections that the information sought seeks confidential and proprietary information. However, Defendant can designate those documents confidential under the protective order for this matter.  *See* Dkt. No. 18. Defendant also objects that the information is not relevant. However "[r]elevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party."  *Khalilpour v. CELLCO P'ship*, No. C. 09-02712 CW (MEJ), 2010 WL 1267749, at *2 (N.D. Cal. 2010).

Plaintiff's lawsuit alleges TCPA and CIPA violations, and the information requested is important for both class certification and merits, as discovery is not bifurcated.  For the TCPA claim, Plaintiff must prove at trial that ECMC called putative Class members on their cell phones using either an autodialer or prerecorded/artificial voice. ECMC must then prove its affirmative defense of prior express consent, the proof of which Plaintiff seeks by this motion and is entitled to receive. ECMC refuses to

*Reyes v. Educational Credit Management Corp.*, No. 15cv628
*Redacted* Joint Motion for Determination of Discovery Dispute Regarding
Defendant's Responses to Plaintiff's First Set of Discovery

provide this basic information. For the CIPA claim, Plaintiff must prove ECMC recorded the subject phone calls without notice to the putative Class members.

Here, ECME's use of general boiler-plate objections are not well-founded and Defendant should be required to respond substantively to Plaintiff's discovery. The information requested is directly relevant to the claims and defenses at issue in this case. As discussed in more detail below, Plaintiff is entitled to receive discovery related to his class-plead case. Rule 23 specifies several elements that are relevant to class certification, which include the size of the class (numerosity), whether common issue of law or fact exist (commonality), whether the class representative's claims are typical (typicality), and whether the common claims predominate over individual claims (predominance). *See* Fed. R. Civ. P. 23. Rule 26(b)(1) mandates a broad scope for discovery – "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The scope of relevant discovery includes class certification issues. *See Manno v. Healthcare Revenue Recovery Grp., LLC*, No. 11-61357, 2012 WL 4192987, at *3 (S.D. Fla. Sept. 18, 2013) (compelling defendant's discovery responses to numerosity issues and rejecting defendant's argument that such discovery was inappropriate because the class was not certifiable). Thus, unless Defendant is willing to stipulate to class certification and to violations of the TCPA and CIPA, Plaintiff "is entitled to develop those facts through the formal discovery process" that are necessary to demonstrate that the class should be certified under Rule 23 for violations of the TCPA. Newberg of Class Actions § 7:14 (5th ed.).

Defendant's claim that Plaintiff already has a significant amount of information is simply not true. On July 23, 2015, in response to Plaintiff's inquiry regarding Defendant's initial disclosures, Defendant finally identified its dialer company – Noble System. Following identification, Plaintiff promptly issued a subpoena to Noble Systems to obtain information about the dialer and calls made. According to counsel for Noble, Noble was only to keep records for a period of 30 days, however, by chance, had maintained a few additional months of records. So without objection from ECMC,

*Reyes v. Educational Credit Management Corp.*, No. 15cv628
*Redacted* Joint Motion for Determination of Discovery Dispute Regarding
Defendant's Responses to Plaintiff's First Set of Discovery

Noble Systems promptly produced the outbound dialer list for calls ECMC made for the time period of June 1, 2015 to August 18, 2015. Defendant's current objections to production of the documents it maintains is disingenuous.

Plaintiff incorporates these arguments in each and every request he seeks to compel below. For brevity purposes, the requests Plaintiff seeks to compel generally include: (1) Defendant's outbound dial list and related reports about calls made, (2) documents pertaining to Defendant's affirmative defense of "prior express consent", including skip trace reports and numbers obtained via number trapping, (3) the telephone numbers Defendant used to make the calls, (4) TCPA compliance and complaints, (5) Defendant's policies and procedures for recording calls, and (6) identification of the recorded calls, including the dates and numbers recorded. Plaintiff requests this Court (1) overrule Defendant's objections because it asserted boilerplate/generalized objections and (2) order Defendant to substantively respond to Plaintiff's requests. Further, this case is not ripe for summary judgment and Plaintiff will oppose any stay of discovery because Plaintiff has already been prejudiced by Defendant's obstructionist position with discovery.

## II.    Defendant's Preliminary Statement

Plaintiff has requested a *tremendous* amount of information and documents from ECMC, ostensibly designed to identify purported class members and to drill down on ECMC's contention that not only Plaintiff but many other proposed class members provided "prior express consent" to receiving auto-dialed calls on their cell phones, and that they were advised that the calls were recorded.

ECMC is a "guaranty agency" in the Federal Family Education Loan Program ("FFELP") under the Higher Education Act of 1965, 20 U.S.C. § 1071, et seq. ("HEA"). As such, ECMC helps to administer the FFELP as a guarantor of federal student loans on behalf of the United States Department of Education, including two defaulted student loans obtained by Plaintiff in 2008. The Code of Federal Regulations sets forth, in great detail, the wide variety of activities a guaranty agency must

3

*Reyes v. Educational Credit Management Corp.*, No. 15cv628
*REDACTED* JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE REGARDING
DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF DISCOVERY

undertake on a guaranteed student loan. (See e.g. 34 C.F.R. §§ 682.400-682.423.) (Skerbinc Decl. ¶ 2.)

In carrying out its duties as a guaranty agency, Federal Regulations require ECMC to place a considerable amount of telephone calls regarding federal student loans. ECMC has more than 2.5 million borrowers in its non-defaulted portfolio, defaulted portfolio, and bankruptcy portfolio. In order to help fulfill its obligations under the regulations, ECMC places more than one million calls per month. (Skerbinc Decl. ¶ 4.)

Plaintiff has already obtained a significant amount of information from ECMC in discovery, and via third-party subpoenas (e.g. a three-month outbound dial list from dialing company Noble Systems). To the extent Plaintiff needs additional information, it can be obtained through less intrusive and burdensome means, e.g. a Rule 30(b)(6) deposition. It would require a massive undertaking for ECMC to further comply with Plaintiff's current discovery requests, which is not warranted under the circumstances. (Skerbinc Decl. ¶¶ 5-18; see e.g. *Gusman v. Comcast Corp.*, 298 F.R.D. 592, 596 (S.D. Cal. 2014), *Knutson v. Schwan's Home Service, Inc.*, 2013 WL 3746118 at *8 (S.D. Cal. July 15, 2013) and *Meyer v. Receivables Performance Mgmt., LLC*, 2014 WL 1976664 at *3 (W.D. Wash. May 14, 2014).)

Furthermore, ECMC contends that it has legal defenses to Plaintiff's claims, and has filed a Motion for Summary Judgment as to the Complaint (ECF No. 25.) A stay on further class action discovery is warranted pending resolution of this Motion for Summary Judgment.

### III.    Defendant's Outbound Dial List

#### A.    Plaintiff's Position

ECMC failed to produce any information or documents related it its outbound dial list, the computer list of all phone calls made during the Class Period. Specifically,

4

*Reyes v. Educational Credit Management Corp.*, No. 15cv628
*REDACTED* JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE REGARDING
DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF DISCOVERY

ECMC failed to produced responsive documents to RFP Nos. 14 and 15[1] (Exhibit 4) and failed to provide an adequate response to ROG No. 6 because it only responded as to Plaintiff and not all call recipients (Exhibit 3).

Many courts have found "the outbound call list [to be] reasonably calculated to identify the number of recipients of calls made during the class period, which is relevant to Rule 23 requirements[,]" despite a defendant's overbreadth, privacy and possession objections. *Thrasher v. CMRE Fin. Servs., Inc.*, 2015 WL 1138469, at **2-3 (S.D. Cal. Mar. 13, 2015). *See Gossett v. CMRE Fin. Servs., Inc.*, --F. Supp. 3d --, 2015 WL 6736883, at *3 (S.D. Cal. Oct. 30, 2015) ("the outbound calls lists are relevant to the class claims and meritorious claims and defenses in this case…"), *Gaines v. Law Office of Patenaude & Felix, APC,* No. 13cv1556-JLS(DHB), 2014 WL 3894348, at *2 (S.D. Cal. June 12, 2014) ("the Court finds that the outbound dial list is relevant to the issue of numerosity and commonality under the Federal Rule of Civil Procedure 23(a), and is therefore discoverable."); *see also Gaines v. Law Office of Patenaude & Felix, A.P.C.*, No. 13CV1556-JLS DHB, 2014 WL 3894340, at *1 (S.D. Cal. Aug. 7, 2014) ("[T]he outbound dial list was to be produced in a searchable electronic format, and that the list was to be a complete, unfiltered list that contained all the numbers dialed.").

This information is relevant to both class certification and merits; indeed, this is the crux of the case at trial because from the outbound dial list, it can be determined how many calls were made to cell phones which determines liability and damages. *See Khalilpour,* 2010 WL 1267749, at *2 (The disclosure of names, addresses, and telephone numbers "is a common practice in the class action context.")[2]. The requested documents will provide a means to ascertain which of the numbers dialed within the statutory term are cellular numbers called by an autodialer and thus, is relevant in

---

[1] Plaintiff also subpoenaed these records from ECMC's dialer company, Noble Systems; however records were only maintained for a three month period. With no objection by ECMC, Noble Systems produced these records to Plaintiff. Gallucci Decl., ¶¶ 12-13.

[2] Yet with this request, and contrary to what Defendant asserts, Plaintiff is only seeking phone numbers at this time – not names and addresses.

ascertaining potential Class members, substantiating class allegations, but also, importantly, obtaining the evidence necessary to prove his case at trial. *See Knutson v. Schwan's Home Serv.,* No. 12cv964-GPC (DHB), 2013 WL 1222116, at *2 (S.D. Cal. Mar. 25, 2013) [3] Plaintiff requests that all calls, including cellular and landline be provided, to which Plaintiff's expert can then determine which of the calls were made to cellphones using a known cellphone block identifier.[4] *See* Gallucci Decl., ¶ 14. Notably, Defendant's declaration admits that at least the information from Noble can be provided.

Until Plaintiff received Defendant's portion, Plaintiff was completely unaware of Defendant's claim that it does not maintain *any* records prior to December 11, 2012. Oddly enough, Defendant produced account information from Plaintiff dating as far back as August 2011 (ECMC 40 which will be produced under seal if requested by the Court). Gallucci Decl., ¶ 15. Thus, while Defendant maintains its position that it does not have any records prior to December 11, 2012 and has doubts the information Plaintiff seeks can be produced, Plaintiff remains skeptical of those positions. To that argument Plaintiff proposes that the parties' technical experts confer to see how such information can be obtained as it is likely, that though the information cannot be pulled from the Cisco and Ontario dialers themselves, the information can be retrieved from collection notes. Retrieving outbound dial information for this small amount of time, from March 20, 2011 to December 11, 2012, should not be overly burdensome as the remaining dial information can be retrieved directly from the Noble dialer.

---

[3] The March 25, 2013 order was reversed in part by *Knutson v. Schwan's Home Serv.*, No. 12cv964-GPC (DHB), 2013 WL 3746118 (S.D. Cal. July 15, 2013). On remand this Court held that a truncated dial list was indeed relevant to the question of commonality because it would show, after being analyzed by the plaintiffs' consultants, whether the calls made by the defendant were made to the putative class members' cellular telephones. *Knutson v. Schwan's Home Serv.*, 2013 U.S. Dist. LEXIS 103094, at *4 (S.D. Cal. July 23, 2013).

[4] Defendant need not separate cellular number from landline numbers, thus any objection to producing a dial list for this reason is meritless.

6

*Reyes v. Educational Credit Management Corp.*, No. 15cv628
*Redacted* Joint Motion for Determination of Discovery Dispute Regarding
Defendant's Responses to Plaintiff's First Set of Discovery

As discussed above, Defendant's boilerplate objections must be overruled. Further ECMC has failed to meet its burden regarding how production of documents is unduly burdensome. "[T]he burden shifts to the opposing party to specify how the discovery request is…burdensome, or oppressive." *Dolfo v. Bank of America, N.A.*, No. 11-CV-2828-DMS (BGS), 2013 WL 1316705, at *4 (S.D. Cal. Mar. 29, 2013). ECMC did not provide any estimate as to the time or expense that would be required to produce the outbound dial list.

### B. ECMC's Response

Plaintiff is not entitled to the requested four-year "dial list" because:

1.      What Plaintiff seeks is essentially a "class list," i.e. a list of potential class members and their contact information. Plaintiff specifically claims that the list "is relevant in ascertaining potential class members." However, the Supreme Court has held that names and addresses of putative class members are not "within the scope of legitimate discovery." (*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 354.) While the Supreme Court did not go so far as to say that this information is never discoverable under any circumstances, Plaintiff has not made a sufficient showing here that the general rule should be disregarded.

2.      As conceded by Plaintiff herein, Plaintiff has already obtained the list Plaintiff seeks from a dialing company used by ECMC, for a three-month period (not two months, as claimed by Plaintiff). This three-month list includes millions of calls, and ECMC estimates that it places more than one million calls per month. (Skerbinc Decl. ¶ 4.) This is more than sufficient. As Plaintiff already has three months' worth of data demonstrating millions of phone calls, Plaintiff cannot seriously argue that he does not have sufficient information to try to establish numerosity, for example.

3.      In *Gusman v. Comcast Corp.*, 298 F.R.D. 592, 596 (S.D. Cal. 2014), the Court held that the production of an outbound dial list was "not warranted," due to "the availability of other, less burdensome methods of discovering this information." Here, Plaintiff is already in the possession of a sufficient, three-month dial list, and the

7

*Reyes v. Educational Credit Management Corp.*, No. 15cv628
*Redacted* Joint Motion for Determination of Discovery Dispute Regarding
Defendant's Responses to Plaintiff's First Set of Discovery

production of a more extensive, four-year dial list is therefore even less warranted than it was in *Gusman*. To the extent Plaintiff believes he needs further information, it can be obtained via a Rule 30(b)(6) deposition, in which counsel can ask specific questions regarding the pertinent issues.

4. As described more fully in the Declaration of Jennifer Skerbinc, it would be extremely burdensome for ECMC to produce the requested four-year dial list, and ECMC does not have any dial list records pre-dating December 11, 2012 in any event. (Skerbinc Decl. ¶¶ 5-8.) (Note: As should be obvious, ECMC does maintain *other* records that pre-date December 11, 2012 (e.g. Plaintiff's 2008 promissory notes and other records which have been produced), just not any such *dial list* records, which are what Plaintiff seeks.) ECMC conservatively estimates that it has placed approximately 100 million calls during the applicable class period. (Skerbinc Decl. ¶ 9.) It goes without saying that the amount of information sought by Plaintiff is enormous, and ECMC has never even attempted to export this much data, and it is unknown whether it even can be done. (Skerbinc Decl. ¶ 6.)

5. Furthermore, the data sought by Plaintiff is protected by the Federal Information Security Management Act ("FISMA") and the Department of Education would likely need to approve the data security standards of any entity that received this federal data. (Skerbinc Decl. ¶ 6.)

6. Plaintiff seeks private and personal information regarding potentially 2.5 million student loan borrowers like himself. (Skerbinc Decl. ¶ 4.) To produce such a massive amount of confidential information is not warranted, and would violate the borrowers' right to privacy, particularly in light of the fact that Plaintiff has already obtained a large amount of the data via third-party subpoenas. In addition, ECMC has a policy to not call cell phone numbers with an automated dialer without prior express consent to do so. Thus, ECMC contends that it has consent to call for most numbers on any dial list. The owners of those phone numbers would not be part of plaintiff's putative class, and their information would not be relevant or discoverable. The

production of a dial list requested by Plaintiff would result in a violation of the privacy of millions of non-class members.

7.     Plaintiff's motion for class certification is not due to be filed until April 15, 2016.  (ECF No. 16.)  Plaintiff's request for a four-year dial list is premature and excessive.  Plaintiff has not articulated why he needs four years of call information prior to certification.

8.     Plaintiff must show that the list is relevant to Rule 23(a)'s requirements for class certification.  In *Knutson v. Schwan's Home Serv., Inc.*, 2013 WL 3746118 (S.D. Cal. July 15, 2013), the Court held that this type of request was potentially overbroad and does not help establish ascertainability and typicality for example.  Numerosity is a non-issue, as discussed above.  The Court in *Knutson* also held that even if some information could potentially be relevant, the production of the entire dial list (3.9 million calls during a four-year period) was not justified.  (*Id.* at *8.)  Here, ECMC placed an estimated 100 million calls, i.e. nearly 25 times the amount of calls at issue in *Knutson*.

9.     Plaintiff intends to use a reverse-lookup provider to ascertain potential class members from a dial list of phone numbers.  However, there is no reverse-lookup provider that can reliably provide subscriber information at a specified date in the past, because many people switch phone numbers; numbers can be reassigned from landlines to cell phones and vice versa; the subscriber of a telephone number is often not the same person who uses the number; etc.  (See e.g. *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 524 (E.D. Wis. 2014).)

Similarly, in *Smith v. Microsoft Corp.*, 297 F.R.D. 464, 473 (S.D. Cal. 2014), the Court held that "because more than five years have passed, it is likely that many members of the proposed class have changed their numbers.  Thus, new persons who do not belong in the class might now own numbers encompassed by the class, and persons who should be in the class may no longer own the number that received an Xbox Text.  Thus, while Plaintiff has the phone numbers of people who were sent the Xbox Texts

five years ago, he does not have those persons' current information, making identification of the class members a daunting task."

Furthermore, Commissioner Ajit Pai of the Federal Communications Commission ("FCC") recently advised that "over 37 million telephone numbers are reassigned each year" and "no authoritative database exists to track all disconnected or reassigned telephone numbers or link all consumer names with their telephone numbers." (*Dissenting Statement of Commissioner Ajit Pai Re: In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, WC Docket No. 07-135 (June 18, 2015), available at https://www.fcc.gov/article/doc-333993a5.)

Based on the foregoing, the information plaintiff seeks to obtain from the outbound dial list is not reliable. Unreliable information is irrelevant, and cannot be used to establish class action eligibility. Therefore, the information is not discoverable.

## IV. Documents, Communications and Processes Evidencing Procurement of Cellular Telephone Numbers, "Prior Express Consent", Continuing "Prior Express Consent" and Removal Requests

### A. Plaintiff's Position

ECMC failed to produce any information or documents upon which it may rely at trial or perhaps at class certification to establish prior express consent of call recipients. Specifically, ECMC failed to produce responsive documents to RFP Nos. 16, 17, 18, (**Exhibit 4**) and instead provided boilerplate objections. ECMC also failed to adequately respond to Plaintiff's ROG No. 5 because it did not state whether it number trapped or skip traced call recipients (**Exhibit 3**). ECMC seeks to prejudice Plaintiff by withholding any evidence of prior express consent and only provided boilerplate objections. If ECMC agrees to forego introduction of any such evidence (RFP No. 18 and ROG No. 5), Plaintiff will not seek its production; however, Plaintiff needs that evidence to counter that affirmative defense and to take a Rule 30(b)(6) deposition about such evidence. As the Court ordered in *Thrasher* "that if [defendant] intends to rely on its [] affirmative defense of prior express consent at trial, then it has the burden

10

*Reyes v. Educational Credit Management Corp.*, No. 15cv628
*REDACTED* JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE REGARDING
DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF DISCOVERY

to prove it has consent to call the phone numbers at issue." *Thrasher*, 2015 WL 1138469, at *6 (citations omitted).

Remember Plaintiff does not have the burden of demonstrating "prior express consent." Rather, based on the January 4, 2008 Federal Communications Commission Declaratory Ruling and because the concept of "prior express consent" is properly understood as an affirmative defense to TCPA liability, the burden of demonstrating "prior express consent" is squarely placed on the entity alleged to have placed calls in violation of the TCPA. Even as to those customers who listed their cellular phone numbers on applications for services, Defendant must provide evidence that they "clearly and unmistakably" provided prior express consent to receive calls on his cellular telephone via an "artificial or prerecorded voice" and/or an "automatic telephone dialing system." *See Stemple v. QC Holdings, Inc.*, 2013 U.S. Dist. LEXIS 99582, at *22 (S.D. Cal. June 17, 2013) (ordering production of "any and all communications, written or otherwise, on which Defendant would rely on at trial or other hearing, to show prior express consent was given for all cellular numbers that were actually dialed within the statutory term."); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009); *Gutierrez v. Barclays Grp.*, 2011 WL 579238, at *2 (S.D. Cal. Feb. 9, 2011); *see also Gaines*, 2014 WL 3894348, at *4 ("The Court finds the information sought by Plaintiffs is relevant. "Prior express consent" is an affirmative defense that defendants in TCPA cases have the burden to prove...As this defense is likely to be raised as an issue in the certification proceeding, the Court finds Plaintiff's discovery requests are appropriate").

Further, ECMC failed to produce any information or documents regarding the numbers it obtained via skip tracing[5] (RFP No. 16) or number trapping[6] (RFP No. 17).

_____

[5] Skip tracing is the process whereby an entity obtains phone numbers, including cell phone numbers, through third parties in the business of selling that information, and that process therefore negates any possible consent defense as to all numbers so obtained.

In addition to being directly relevant to whether an individual provided "prior express consent," skip tracing reports and number trapping reports are necessary to assist in ascertaining the class. In *Meyer v. Portfolio Recovery Associates, LLC*, 11CV1008 AJB RBB, 2011 WL 11712610, at *3 (S.D. Cal. Sept. 14, 2011), the court found that the plaintiff did not define the class in such a way as to require an individualized inquiry regarding consent of each member of the class, but rather that class membership could be determined based on objective criteria as the plaintiff limited the class to those cellular telephone numbers that the defendant obtained from a source other than the cell phone owner or third party that assigned or sold the debt. This could be determined because the Defendant obtained the cell phone numbers via skip-tracing and did not obtain them from either the cell phone owner or third party debt owner or assignee, and thus there was no question of consent and no need for an individualized inquiry. Similarly, skip trace reports and number trap reports are relevant for class certification.

## B. ECMC's Response

1. ECMC has provided ample evidence of prior express consent to call Plaintiff. This is addressed in ECMC's Motion for Summary Judgment. (ECF No. 25.) No further class-based discovery regarding prior express consent to call putative class members is warranted, at least not until the Court has ruled on ECMC's Motion for Summary Judgment. Furthermore, because there is significant evidence of prior express consent to call Plaintiff, this case is not certifiable as a class, due to the "extensive individual fact inquiries into whether each individual gave 'express consent' by providing their wireless number to the creditor during the transaction that resulted in the debt owed." (*Blair v. CBE Group, Inc.* 2015 WL 5086375 (S.D.Cal. 2015).) Thus, no class-wide discovery on this issue is warranted.

2. Contrary to Plaintiff's repeated assertions, it is Plaintiff's burden in a class action to show a lack of prior express consent. In this regard, see e.g. *Smith v.*

---

[6] Number trapping is the process by which an entity obtains a number after a caller has called into to that entity and the number is trapped and stored in the entity's system.

12

*Reyes v. Educational Credit Management Corp.*, No. 15cv628
*REDACTED* JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE REGARDING
DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF DISCOVERY

*Microsoft Corp.*, 297 F.R.D. 464, 471 (S.D. Cal. 2014) (burden of showing absence of consent is on plaintiff) and *Fields v. Mobile Messengers Am., Inc.*, 2013 WL 6073426 at *3 (N.D. Cal. Nov. 18, 2013) ("Because our court of appeals [*Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012)] has stated that consent is an element of a prima facie TCPA claim, this [Court] is duty-bound to place the burden on plaintiffs to prove a lack of prior express consent").

3.  The data sought by Plaintiff is protected by the Federal Information Security Management Act ("FISMA") and the Department of Education would likely need to approve the data security standards of any entity that received this federal data. (Skerbinc Decl. ¶ 6.)

4.  It is virtually impossible for ECMC to provide the consent documents sought by Plaintiff. ECMC would have to manually review every account record for each of the millions of borrowers potentially at issue, to determine the circumstances through which consent was obtained to place the call. There are numerous ways a borrower can provide such consent. For example, a borrower might write his/her phone number on a loan application or other document. During the lifespan of a federal student loan, many documents and forms are completed by the borrower (the documentation varies depending on depending on each borrower's individual situation), and ECMC would have to manually review all such documentation for each account. It is also common that borrowers provide consent in telephone conversations. ECMC would have to review all notes for each and every account to determine if this occurred, and listen to recordings of such telephone conversations, to the extent available. ECMC has had a policy since April 14, 2012 to mark accounts for which such verbal consent has been given. Another way a borrower can give consent is by providing his/her phone number via ECMC's website. Borrowers can access and manage their accounts via the ECMC website, and update their contact information online. Yet another way borrowers might provide consent is by sending letters or e-mails to ECMC asking to be contacted on their cell phone numbers. Such correspondence would have to be

manually reviewed for each and every account. (Skerbinc Decl. ¶ 14.)

Furthermore, the federal student loan process can involve multiple entities other than ECMC, depending on the circumstances of each account, such as the federal government, banks and other lenders, servicers, debt collection agencies, etc. It is likely that many borrowers called by ECMC have given prior express consent to be contacted to these other entities. Such information is not readily available to ECMC and not within the care, custody or control of ECMC. ECMC would have to contact and work with all involved entities for each account to determine whether consent was provided to them, in addition to or instead of ECMC. This would require a massive undertaking, given the likely millions of accounts ostensibly involved in this case. This would also negatively impact ECMC's relationship with its business partners, likely resulting in a disruption to its business, and an inability to adequately perform its duties to the U.S. Department of Education pursuant to the Code of Federal Regulations. (Skerbinc Decl. ¶ 15.)

The production of such an immense amount of information is not justified under the circumstances.

5.    Any documents regarding "skip-tracing" and "number trapping" are irrelevant, because ECMC did not obtain Plaintiff's telephone number via "skip-tracing" or "number-trapping." (See ECMC's original and supplemental responses to Plaintiff's Interrogatory No. 4.) Plaintiff cannot represent a hypothetical class of persons whose telephone numbers ECMC allegedly obtained in this manner, when he is not a member of that class himself, and thus the requested information is irrelevant and not discoverable. "We have repeatedly held that a class representative must be part of the class." (*General Telephone Company of the Southwest v. Falcon*, 457 U.S. 147, 156 (1982); *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1067 (9th Cir. 2014).)

## V.    Telephone Numbers Used by Defendant to Make Calls
### A.    Plaintiff's Position

ECME failed to provide adequate response to Plaintiff's ROG No. 9 (**Exhibit 3**) because it only provided the phone numbers that it used to call the Plaintiff, and not all

call recipients. Defendant has not established any burden in providing this information, and its boilerplate objections must be overruled. Moreover, this request is relevant to class certification, as the volume of numbers used by ECMC to call persons on their cellphones tends to establish Rule 23 factors, like numerosity.

## B. ECMC's Response

As set forth above, numerosity is not an issue in this matter. ECMC places more than one million calls per month. (Skerbinc Decl. ¶ 4.) Plaintiff is already in possession of call records showing millions of calls. The probative value of the information requested by Plaintiff's Interrogatory No. 9 is therefore very low, and clearly outweighed by the extreme burden on ECMC to provide it. As discussed, ECMC conservatively estimates that it has placed approximately 100 million calls during the four-year class period. (Skerbinc Decl. ¶ 9.) To determine each and every number used by ECMC to place 100 million calls is simply not possible, and even if it was, the resulting information would only have minimal relevance in this matter, if any at all.

## VI. TCPA Complaints

## A. Plaintiff's Position

ECMC failed to produce any information related to consumer complaints related to the phone calls, regardless as to whether a lawsuit arose out of the complaint. *See* ROG Nos. 12 and 13 (**Exhibit 3**). Information related to complaints against Defendant or its' agents related to the phone calls at issue in Plaintiff's complaint is directly relevant to Defendant's willful violation of the TCPA. *See Kaufman v. ACS Sys., Inc.*, 110 Cal. App. 4th 886, 896 (2003) (The court may impose treble damages for willful or knowing violations.) If prior complaints have been made against Defendant or its' agents for TCPA violations, Plaintiff has a right to know. Further, information regarding consumer complaints go directly to Defendant's procedures for complying with the TCPA which have has been found to be relevant in TCPA actions. *See Kane v. National Action Finance Services*, No. 11-11505, 2012 WL 1658643, at *2-5 (E.D.

15

*Reyes v. Educational Credit Management Corp.*, No. 15cv628
*REDACTED* JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE REGARDING
DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF DISCOVERY

Mich. May, 11, 2012) (ordering a defendant to produce documents relating to its procedures for complying with the TCPA). Moreover, to the extent such information is publically available, Defendant is in the best position to identify such complaints.

### B. ECMC's Response

The information Plaintiff seeks can be obtained via a search of the PACER system. This is what ECMC would have to do if compelled to further respond to these interrogatories. While the right to discovery is broad, ECMC should not be required to conduct and pay for PACER searches on Plaintiff's behalf, or provide information that is equally available to both parties. Furthermore, ECMC would not necessarily have all the information Plaintiff seeks, as these interrogatories demand information regarding all complaints made (whether served on ECMC or not), and ECMC cannot possibly respond with respect to potential matters of which ECMC has not been made aware.

## VII. <u>Call Recording</u>

### A. Plaintiff's Position

ECMC substantially fails to adequately respond to almost all of Plaintiff's discovery regarding Defendant's call recordings. Specifically, Plaintiff seeks to compel further responses on ROG No. 17 and 19, and RFP Nos. 30, 31, 33, 34, 35, 37 and 38. Plaintiff's Complaint alleges that Plaintiff called Defendant two times using his cellphone on February 5, 2015. Dkt. No. 1 at ¶ 22. During these two private conversations, Defendant's representatives never disclosed to Plaintiff that the calls would be recorded, and Plaintiff was otherwise unaware that the calls were being recorded. Dkt. No. 1 at ¶¶ 22-27.

Defendant failed to substantively respond to ROG No. 17 by only providing "A recording of the disclosure used for inbound calls is produced concurrently herewith. For outbound calls, Responding Party has a policy to disclosure that it is calling on a recorded line." However, this answer does not address Plaintiff's inquiry about when those recordings are played, as Plaintiff never heard a recording for his inbound call because he went directly to a live representative. (See Dkt. No. 1, ¶¶ 22-25. Thus,

16

*Reyes v. Educational Credit Management Corp.*, No. 15cv628
*REDACTED* JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE REGARDING
DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF DISCOVERY

Defendant must provide the particularities of its call recording policies, including exactly when in a call flow disclosures were made.

Defendant also substantively failed to respond to ROG No. 19 by asserting boilerplate objections and failing to explain its alleged burden in identifying the recorded calls by date and phone number. As discussed above, this is improper and Defendant must be ordered to supplement this request. Moreover, it is odd that Defendant responded as such to ROG No. 19, but then in RFP Nos. 30 and 31 stated it was "unable to locate any documents responsive to this request" without any further explanation. This response is improper because Defendant fails to explain why it cannot comply.

In response to RFP No. 33, Defendant provided a supplemental response indicating that Plaintiff had already subpoenaed ECMC's dialer manual, and thus did not need to produce anything further, but would look for its copies of the same manuals. This, however, was not what Plaintiff sought in response to RFP No. 33, and as Plaintiff clarified during the parties' meet and confer, Plaintiff seeks Defendant's own manuals that were in effect during the relevant time period regarding Defendant's call recording systems, which would likely explain whether the call recording disclosure was "mandatory" or "non-mandatory."

In RFP Nos. 34, 35 and 38, Defendant states "After a diligent search and reasonably injury, Responding Party has been unable to locate any responsive documents to this request." However, this response is incomplete because it does not provide any explanation as to why it cannot comply – have the documents been destroyed or have they never existed? *See* Rutter, Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 11(IV)-C. Plaintiff does not know, but is entitled to know what type of search Defendant conducted or some explanation about why it cannot comply. These requests seek documents on why ECMC records the subject calls, how ECMC determines what calls are recorded, and whether ECMC determines in making the recordings whether the number (call) being recorded is a cell or landline. Thus, the

requests are relevant to establishing Defendant's systemic procedures in recording the calls, which is directly relative to the Rule 23 elements.

ECMC also failed to substantially respond to RFP No. 37. Through RFP No. 37, Plaintiff seeks Defendant's policies and procedures under in the process of recording the calls, including the call flows. As discussed above, Plaintiff called Defendant, on at least two occasions, but did not hear any disclosure that his calls were being recorded and thus seeks information about Defendant's policies and procedures for recording the calls and/or making disclosures that the calls are being recorded. To be more specific, in using Noble System's dialer, ███████████████████████████████████████ ███████████████████████████████. (Gallucci Decl., Ex. 9 (p 442 of Setup and Utilities Manual). ███████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████ (Gallucci Decl., Ex. 9). ████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████ (Gallucci Decl., Ex. 9). When Plaintiff phoned the Defendant, Plaintiff was automatically connected with an agent, and thus did not hear any recorded disclosure. Based on Plaintiff's experience, it is Plaintiff's position that while Defendant may have a recording that plays for incoming calls, that recording is *non-mandatory*, such that if an agent is available to take a call, the caller will not hear the recording and instead will be directly connected to the agent. This is what happened to Plaintiff, thus the recording not always played to callers. Thus, Plaintiff seeks additional information about Defendant's policies and procedures surrounding the Defendant's recording of the calls. Further, Defendant's position that Plaintiff take a Rule 30(b)(6) deposition as opposed to obtaining relevant discovery is disingenuous. Since service of Plaintiff's discovery, Plaintiff has attempted to obtain basic discovery about Defendant's policies and procedures. Defendant has consistently stated it performed a

"diligent search and reasonable inquiry" and after prodding by Plaintiff's counsel regarding seemingly incompletely responses and productions, Defendant has slowly produced additional relevant documents. While Plaintiff appreciates Defendant has produced the documents it's "been able to locate," Plaintiff, for good reason, is skeptical about the diligence in Defendant's search. Thus, Plaintiff further seeks an order that Defendant complete its search and affirmatively state all responsive documents have been produced.

### B.     ECMC's Response

1.     With respect to Interrogatory No. 17, defense counsel was under the impression that the issue was resolved during the meet-and-confer process. ECMC advised Plaintiff that for incoming calls to ECMC, the following recorded disclosure is played: "Thank you for calling ECMC. This call is being recorded. Please hold while we connect you to an available representative." ECMC produced a recording of this message in discovery, and Plaintiff's counsel requested information regarding when ECMC started using the message. ECMC therefore served a Supplemental Response to Interrogatory No. 17, stating under oath that the recording for inbound calls has been used since on or about December 13, 2012. (ECMC's Supplemental Response to Plaintiff's Interrogatory No. 17; see also Skerbinc Decl. ¶ 17.) Plaintiff apparently chooses to believe that ECMC's responses are untrue.

2.     As to documents (policies and procedures) regarding call recording, ECMC has produced all responsive documents it has been able to locate. ECMC does not have any documents regarding "call flows." ECMC has repeatedly explained that, for inbound calls to ECMC, the above-referenced message ("Thank you for calling ECMC. This call is being recorded. Please hold while we connect you to an available representative.") is played for the caller. For outbound calls, i.e. for calls placed by ECMC, ECMC has a policy to disclose that the call is made on a recorded line. This policy has been in effect for many years, and ECMC has been unable to determine a specific start date. However, the disclosure language for outbound calls was last

modified on or about July 10, 2012. (Skerbinc Decl. ¶ 17.) To the extent Plaintiff needs more technical information or has additional questions regarding matters set forth in the Noble System manual or other documents already in Plaintiff's possession, Plaintiff can conduct a Rule 30(b)(6) deposition, which would be the logical way to proceed.

3.     It would be an extremely burdensome task for ECMC to create a list of the enormous amount of recordings sought by Plaintiff. Because ECMC places more than one million calls per month and Plaintiff seeks a year's worth of recordings, ECMC would first have to analyze approximately 12 million calls to determine how many of them were recorded. A conservative estimate would be approximately 4 million recordings. (Skerbinc Decl. ¶ 16.) Furthermore, as discussed above, ECMC has a policy to use a recording advisement for both inbound and outbound calls. (Skerbinc Decl. ¶ 17.) Accordingly, barring any mistakes or inadvertent technical issues, the vast majority of any recordings about which Plaintiff seeks information will be irrelevant, as the consumer was advised that the call was being recorded. To determine whether a mistake was made (for example that the ECMC representative may have forgot to advise that he or she was calling on a recorded line), a manual review of each and every recording would have to be made. Because this case potentially involves millions of recordings, such a task is virtually impossible to perform, for anyone. (Skerbinc Decl. ¶ 18.)

Also, it must be mentioned that the recording disclosure for inbound calls will itself generally not be part of any recordings, because the recordation begins once the caller has been transferred to an available representative. Thus, the information Plaintiff seeks is not relevant, as neither any list of recordings, nor the recordings of inbound calls, will include the disclosure. Again, if Plaintiff needs more technical information about this, Plaintiff can conduct a Rule 30(b)(6) deposition. This would be a far less intrusive and burdensome way to proceed.

Date: December 1, 2015                 By: _s/Kas Gallucci_

*Reyes v. Educational Credit Management Corp.*, No. 15cv628
*Redacted* Joint Motion for Determination of Discovery Dispute Regarding
Defendant's Responses to Plaintiff's First Set of Discovery

1

**LAW OFFICES OF RONALD A. MARRON**
2
RONALD A. MARRON
ALEXIS M. WOOD
3
KAS GALLUCCI
4
651 Arroyo Drive
San Diego, California 92103
5
Telephone: (619) 696-9006
6
Facsimile: (619) 564-6665

7
**LAW OFFICES OF DANIEL G. SHAY**
8
DANIEL SHAY (SBN 250548)
9
*DanielShay@TCPAFDCPA.com*
409 Camino Del Rio South, Suite 101B
10
San Diego, California 92108
11
Telephone: (619) 222-7429
Facsimile: (619) 431-3292
12

13    Date: December 1, 2015          **CARLSON & MESSER LLP**

14                                    By:    s/David J. Kaminski
15                                           Charles R. Messer
                                             David J. Kaminski
16                                           Stephen A. Watkins
                                             Attorneys for Defendant
17                                           CMRE Financial Services, Inc.

18

19

20

21

22

23

24

25

26

27

28