**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
ALEXIS WOOD (SBN 270200)
*alexis@consumersadvocates.com*
KAS L. GALLLUCCI (SBN 288709)
*kas@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**LAW OFFICES OF DANIEL G. SHAY**
DANIEL SHAY (SBN 250548)
*DanielShay@TCPAFDCPA.com*
409 Camino Del Rio South, Suite 101B
San Diego, California 92108
Telephone: (619) 222-7429
Facsimile: (619) 431-3292

*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AJ REYES, on behalf of himself and all others similarly situated, | CASE NO. 3:15-cv-00628-BAS-AGS |
| Plaintiff, | <u>CLASS ACTION</u> |
| vs. | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |
| EDUCATIONAL CREDIT MANAGEMENT CORP., | |
| Defendant. | Date:        April 24, 2017<br>Ctrm:       4B<br>Judge:      Hon. Cynthia Bashant |
| | NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT |

# **TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................... 1

II. BACKGROUND ..................................................................................... 3

A.  ECMC's Telephone and Recording System .................................... 3

B.  ECMC's Use of Noble's Non-Mandatory Message During the Class Period ....... 4

C.  Mr. Reyes' Telephone Calls to ECMC ............................................ 6

D.  ECMC Has No Records of Consent ................................................. 6

III. LEGAL CONTEXT ............................................................................... 7

IV. ARGUMENT ........................................................................................ 10

A.  Ascertainability is Not a Requirement in the Ninth Circuit, but Plaintiff Meets this Standard Anyway ................................. 13

B.  The Proposed Class Satisfies Rule 23(a)'s Requirements.................. 14

   1.  The Class consists of thousands of individuals.............................. 14

   2.  Class members share common issues of law and fact...................... 15

   3.  Plaintiff's claims are typical of the proposed Class ....................... 16

   4.  Plaintiff and Proposed Class Counsel will continue to fairly and adequately protect the interests of the proposed Class ....................... 17

C.  The Proposed Class Satisfies Rule 23(b)(3)'s Requirements.............. 18

   1.  Common questions of law and fact predominate. ........................... 18

   2.  A class action is the superior method for resolving this case ........... 20

      (a) It would be prohibitively expensive for individual plaintiffs to prosecute their CIPA claims .................................. 21

      (b) No other litigation has commenced .................................... 22

      (c) Desirability of concentrating litigation to this forum ........... 23

i

(d) Management difficulties do not exist ................................................... 23

E.   Certification Under 23(b)(2) is Appropriate...................................................24

V. CONCLUSION ..................................................................................................25

*Reyes v. Educational Credit Management Corp.*, No. 15cv628
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION

# TABLE OF AUTHORITIES

## United States Supreme Court Cases

*Amchem Prods., Inc. v. Windsor,*
 521 U.S. 591 (1997) ........................................................................ 18

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
 133 S. Ct. 1184 (2013) ................................................................... 11

*Amgent Inc. v. CT Retirement Plans & Trust Funds,*
 133 S. Ct. 1184 (2013) ................................................................... 19

*Erica P. John Fund, Inc. v. Halliburton Co.,*
 131 S. Ct. 2179 (2011) ................................................................... 19

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
 528 U.S. 167 (2000) ........................................................................ 25

*Gen. Tel. Co. of S.W. v. Falcon,*
 457 U.S. 147 (1982) ........................................................................ 15

*Tyson Foods, Inc. v. Bouaphakeo,*
 136 S. Ct. 1036 (2016) ................................................................... 19

*Wal-Mart Stores, Inc. v. Dukes,*
 131 S. Ct. 2541 (2011) ..................................................... 11, 15, 16

## United States Court of Appeals Cases

*Briseno v. ConAgra Foods, Inc.,*
 844 F.3d 1121 (9th Cir. 2017) ..................................................... 13

*Gates v. Rohm and Haas Co.,*
 655 F.3d 255 (3rd Cir. 2011) ....................................................... 24

*Gene & Gene LLC v. BioPay LLC,*
 541 F.3d 318 (5th Cir. 2008) ....................................................... 16

*Hanlon v. Chrysler Corp.,*
 150 F.3d 1011 (9th Cir. 1998) ............................................ passim

*Hanon v. Dataproducts Corp.*,

   976 F.2d 497 (9th Cir. 1992) ................................................................. 16

*In re Mego Fir. Corp. Sec. Litig.*,

   213 F.3d 454 (9th Cir. 2000) ................................................................. 11

*Klay v. Humana, Inc.*,

   382 F.3d 1241 (11th Cir. 2004), *abrogated in part on other grounds by Bridge v.*

   *Phoenix Bond & Indem. Co.*, 533 U.S. 639 (2008) ................................. 23

*Lerwill v. Inflight Motion Pictures, Inc.*,

   582 F.2d 507 (9th Cir. 1978) ................................................................. 17

*Meyer v. Portfolio Recovery Assocs., LLC*,

   707 F.3d 1036 (9th Cir. 2012) ............................................................... 20

*Murray v. GMAC Mortgage Corp.*,

   434 F.3d 948 (7th Cir. 2006) ................................................................. 22

*Parra v. Bashas', Inc.*,

   536 F.3d 975 (9th Cir. 2008) ................................................................. 15

*Pierce v. County of Orange*,

   526 F.3d 1190 (9th Cir. 2008) ............................................................... 18

*United Steel v. ConocoPhillips Co.*,

   593 F.3d 802 (9th Cir. 2010) ................................................................. 11

*Valentino v. Carter-Wallace, Inc.*,

   97 F.3d 1227 (9th Cir. 1996) ................................................................. 20

*Wolin v. Jaguar Land Rover N. Am., LLC*,

   617 F.3d 1168 (9th Cir. 2010) ............................................................... 20

*Zinser v. Accufix Research Inst., Inc.*,

   253 F.3d 1180 (9th Cir. 2001) .................................................... 18, 22, 23

iv

**United States District Court Cases**

*Ades v. Omni Hotel Mgmt. Corp.*,
No. 2:13-cv-02468-CAS (MANx), 2014 WL 4627271 (C.D. Cal. Sept. 8, 2014).....
.......................................................................................................... 3, 12, 17, 21

*Agne v. Papa John's Int'l, Inc.*,
286 F.R.D. 559 (W.D. Wash. 2012)...................................................... 20

*Bee, Denning, Inc. v. Cap. Alliance Grp.*,
310 F.R.D. 614 (S.D. Cal. 2015)............................................................. 19

*Brown v. Defender Security Co.*,
No. CV 12-7319-CAS (PJWx), 2012 WL 5308964 (C.D. Cal. Oct. 22, 2012) .... 10

*Demmick v. Cellco P'ship*,
No. 06-cv-2163, 2010 WL 3636216 (D.N.J. Sept. 8, 2010)................................ 23

*Fraser v. Wal-Mart Stores, Inc.*,
No. 13-cv-520, 2014 WL 7336673 (E.D. Cal. Dec. 24, 2014) .............................. 23

*Haley v. Medtronic, Inc.*,
169 F.R.D. 643 (C.D. Cal. 1996) ......................................................... 10

*In re Ferrero Litig.*,
278 F.R.D. 552 (S.D. Cal. 2011)........................................................... 18

*In re Infineon Tech. AG Sec. Litig.*,
266 F.R.D. 386 (N.D. Cal. 2009) ......................................................... 19

*In re: Cathode Ray Tub (CRT) Antitrust Litig.*,
308 F.R.D. 606 (N.D. Cal. 2015) ......................................................... 19

*Knutson v. Schwan's Home Serv. Inc.*,
No. 3:12-CV-0964-GPC-DHB, 2013 WL 4774763 (S.D. Cal Sept. 5, 2013).......... 2

*Kristensen v. Credit Payment Servs.*,
12 F. Supp. 3d 1292 (D. Nev. 2014) .............................................. passim

*Lehocky v. Tidel Techs., Inc.*,
220 F.R.D. 491 (S.D. Tex. 2004) ......................................................... 23

v

*Reyes v. Educational Credit Management Corp.*, No. 15cv628
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION

*McDonald v. Bass Pro Outdoor World, LLC*,
    No. 3:13-cv-00889-BAS (DHB), 2014 WL 3867522 (S.D. Cal. Aug. 5, 2014) .......
    ................................................................................................ 3, 12, 17, 20

*McKenzie v. Fed. Ex. Corp.*,
    275 F.R.D. 290 (C.D. Cal. 2011) .......................................................... 22

*Meyer v. Bebe Stores, Inc.*,
    No. 14-CV-00267-YGR, 2017 WL 558017 (N.D. Cal. Feb. 10, 2017) ................ 13

*Raffin v. Medicredit, Inc.*,
    No. CV 15-4912-GHK (PJWx), 2017 WL 131745 (C.D. Cal. Jan. 3, 2017) ............
    ...................................................................................................... passim

*Roberts v. Wyndham Int'l, Inc.*,
    No. 12-cv-5180-PSG, 2012 WL 6001459 (N.D. Cal. Nov. 30, 2012) .................. 10

*Savanna Grp., Inc. v. Trynex, Inc.*,
    No. 10-cv-7995, 2013 WL 66181 (N.D. Ill. Jan 4, 2013)..................................... 14

*Sledge v. Sands*,
    182 F.R.D. 255 (N.D. Ill. 1998) ............................................................ 21

*Stern v. AT&T Mobility Corp.*,
    No. CV 05-8842 CAS (CTx), 2008 WL 4382796 (C.D. Cal. Aug. 22, 2008) passim

*Torres v. Nutrisystem, Inc.*,
    289 F.R.D. 587 (C.D. Cal. 2013) .......................................................... 10

*Tourgeman v. Collins Fin. Servs.*,
    No. 08-CV-1392 JLS (NLS), 2011 WL 5025152 (S.D. Cal. Oct. 21, 2011) ........ 17

*Zubulake v. UBS Warburg LLC*,
    229 F.R.D. 422 (S.D. N.Y. 2004) .......................................................... 4

**California Cases**

*Flanagan v. Flanagan*,
    27 Cal. 4th 766 (2006).......................................................................... 10

*Friddle v. Epstein*,

   16 Cal. App. 4th 1649 (1993)......................................................................... 9

*Kearney v. Salmon Smith Barney, Inc.*,

   39 Cal. 4th 95 (2006)............................................................................ 2, 9

*Kight v. CashCall, Inc.*,

   200 Cal. App. 4th 1377 (Cal. App. 4th Dist. 2011) ............................... 12

*Kight v. CashCall, Inc.*,

   231 Cal. App. 4th 112 (2014).................................................................... 12

*Ribas v. Clark*,

   38 Cal.3d 355 (1985)................................................................................. 9

*Young v. Hilton Worldwide, Inc.*,

   565 F. App'x 595 (9th Cir. 2014) ........................................................... 10

**<u>Statutes</u>**

Cal. Penal Code § 630 ....................................................................................... 9

Cal. Penal Code § 632.7 .................................................................................... 7

**<u>Rules</u>**

Fed. R. Civ. P. 23(a)(1)................................................................................... 14

Fed. R. Civ. P. 23(a)(2)................................................................................... 15

Fed. R. Civ. P. 23(a)(3)................................................................................... 16

Fed. R. Civ. P. 23(a)(4)................................................................................... 17

Fed. R. Civ. P. 23(b)....................................................................................... 24

Fed. R. Civ. P. 23(b)(2)................................................................................... 11

Fed. R. Civ. P. 23(b)(3) .................................................................................. 18

Fed. R. Civ. P. 23(b)(3)(A)–(D) ..................................................................... 21

**<u>Other Authorities</u>**

1 Newberg & Conte, Newberg on Class Actions, §3.3 (4th ed. 2002) ...................... 14

7A Wright & Miller, *Federal Practice & Procedure* § 1777 (2d ed. 1986).............. 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

8 Newberg on Class Actions, § 24.25 (4th ed. 2013)................................................. 16

*Reyes v. Educational Credit Management Corp.*, No. 15cv628
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION

## I.   **INTRODUCTION**

California's Invasion of Privacy Act, Cal. Penal Code §§ 630 *et seq*. ("CIPA"), protects the privacy of communications and aims to protect consumers from the unwanted invasion of privacy associated with having one's voice recorded, without knowledge or consent. In this case, Defendant Education Credit Management Corp. ("ECMC") violated CIPA by relying on faulty systems and deficient policies and thus inappropriately recorded telephone calls with its customers without their consent.  This instant motion seeks certification of the following class:

> All individuals who, between August 2, 2014 to March 31, 2015, inclusive (the "Class Period"), participated in an inbound telephone conversation with a live representative of ECMC that was: (1) placed to an ECMC phone line with a "0" in the Info field for the audio file that contained the verbiage "this call is being recorded"[1] (2) made from a telephone number that includes a California area code (i.e., 209, 213, 310, 323, 408, 415, 424, 442, 510, 530, 559, 562, 619, 626, 650, 657, 661, 707, 714, 760, 805, 818, 831, 858, 909, 916, 925, 949, or 951); and (4) transmitted via cellular telephone.[2] [3]

---

[1] At the time of this filing, ECMC has identified 13 inbound phone lines in which the Info field was set to "0", but has only provided the inbound line in which Plaintiff called. That number is (866) 945-6305.  A pending motion to compel, which is set for hearing on February 28, 2017, seeks the identification of the remaining 12 inbound phone lines that were set to "0." *See* Dkt. Nos. 68 & 72.  Once identified, Plaintiff intends to modify his class definition to specifically reference these numbers.

[2] Excluded from the Class are the following persons: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and its current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

[3] This proposed Class is narrower than the class initially proposed in the Plaintiff's Complaint, filed March 20, 2015. (Dkt. No. 1.)  A narrower class definition is properly

*Reyes v. Educational Credit Management Corp.*, No. 15cv628
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN support OF MOTION FOR
CLASS CERTIFICATION

This motion also requests that the Court appoint plaintiff A.J. Reyes as class representative and The Law Offices of Ronald A. Marron as class counsel.

This case is eminently suited for class treatment. As the California Supreme Court explained in *Kearney v. Salmon Smith Barney, Inc.*, 39 Cal. 4th 95 (2006), CIPA prohibits a party from "secretly or surreptitiously recording [a telephone] conversation, that is, from recording the conversation without first informing all parties to the conversation that the conversation is being recorded." *Id.* at 117-118. In this case, ECMC admits that it had a policy of recording all incoming calls during the Class Period and further admits that during the Class Period, it had 13 inbound lines, including the line that Plaintiff called, that was not properly set up to advise callers at the outset that the calls may be recorded.[4] Specifically, in using Noble Systems, Inc.'s ("Noble") dialer, ECMC has the option to play its prerecorded advisement advising incoming callers that the call would be recorded as a "mandatory" or "non-mandatory" message. A mandatory message or action completes even if an agent becomes available while the message is playing or the action is executing. However, a non-mandatory message or action is interrupted when an agent becomes available. Thus, the dialer stops the message or action, or does not even play the message, and immediately connects the call to the agent. During the Class Period, Defendant had the 13 inbound telephone lines included in Plaintiff's Class set to play the advisement as a non-mandatory message, thus resulting in calls in which the caller was not advised of the recording.

---

considered in a motion for class certification. *See Knutson v. Schwan's Home Serv. Inc.*, No. 3:12-CV-0964-GPC-DHB, 2013 WL 4774763, at *5 (S.D. Cal Sept. 5, 2013).

[4] This admission comes after contradictory/misleading testimony provided in discovery and at the summary judgement stage wherein Defendant produced the Declaration of Jennifer Skerbinc that states, under penalty of perjury, "For incoming calls to ECMC, the following automated voice message is played: 'Thank you for calling ECMC. This call is being recorded. Please hold while we connect you to available representative.' This message has been used by ECMC since approximately December 13, 2012. A caller cannot bypass this message." Dkt. No. 25-2 at ¶ 27; Dkt. No. 72-7 at 3-5.

*Reyes v. Educational Credit Management Corp.*, No. 15cv628
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION

Thus, the key facts underlying Plaintiff's claims are common to all putative Class members and are not seriously in dispute. Litigating these claims in a class action will conserve judicial resources by allowing a single court to decide the legal and factual issues common to all Class members. Moreover, given the relatively small size of each individual claim, a class action is the only realistic way for putative class members to vindicate their rights. *See generally Raffin v. Medicredit, Inc.*, No. CV 15-4912-GHK (PJWx), 2017 WL 131745 (C.D. Cal. Jan. 3, 2017); *Ades v. Omni Hotel Mgmt. Corp.*, No. 2:13-cv-02468-CAS (MANx), 2014 WL 4627271 (C.D. Cal. Sept. 8, 2014); *McDonald v. Bass Pro Outdoor World, LLC*, No. 3:13-cv-00889-BAS (DHB), 2014 WL 3867522 (S.D. Cal. Aug. 5, 2014).

## II.   BACKGROUND

### A. ECMC's Telephone and Recording System

ECMC utilizes a Noble dialer to receive and record incoming calls. *See* Declaration of Alexis M. Wood,[5] Ex.1 (Deposition Transcript of Derrell Mott ("Mott Dep.")), at 24:2-4, 36:17-24. (Mr. Mott is the Manager of Business Analysis and Dialer Administration of ECMC.) *See also* Ex. 2 (Rule 30(b)(6) deposition notice). Among other functions, the Noble dialer directs each inbound call to an available ECMC agent, who answers the call on a telephone at an assigned workstation. *See* Ex. 1, Mott. Dep. at 24:2-21. The Noble dialer also captures and stores pertinent information about incoming calls, including the caller's telephone number, the ECMC number that was called, the date and time of the call, the call duration, and the name of the agent who handled the call. *Id.* at 141:3-13 & Ex. 3. During the Class Period (August 2, 2014 to March 31, 2015), the Noble dialer was programmed to capture the foregoing information for inbound calls. ECMC has produced an Excel spreadsheet from the Noble dialer reflecting calls it received from its inbound number, (866) 945-6305 (the number Plaintiff called), from August 2, 2014 through March 31, 2015. Ex. 4. That spreadsheet contains the call

---

[5] Unless otherwise indicated, all Exhibits are attached to the Declaration of Alexis M. Wood, filed herewith.

date, call time, account number of caller and the telephone number of the incoming caller. The Noble dial list for ECMC's incoming number (866) 945-6305, shows that during the Class Period, that line alone received approximately 2,795 calls from cellphone numbers with California area codes. *See* Declaration of Jeff Hansen ("Hansen Decl."), at ¶ 21. Like the data list produced for the inbound line (866) 945-6305, ECMC can produce similar lists of inbound calls to the other 12 numbers within Plaintiff's Class.[6] *See* Ex. 1, Mott Dep. at 116:14-117:5.

During the Class Period, ECMC's Noble dialer was programmed to make audio recordings of all inbound calls. *See* Ex. 1, Mott Dep. at 36:13-24. Recorded calls are maintained on ECMC's server for two years; however ECMC does not start the recording until after an agent answers the line. *Id*. at 121:13-20, 114:2-7; *see also* Wood Decl., ¶ 6. Thus, ECMC maintains no call recordings which contain the alleged prerecorded opening advisement together with the content of the call.

In addition to recording calls, the Noble dialer can be used to retrieve audio recordings. ECMC was able to retrieve and produce audio files of the telephone conversations between ECMC and Plaintiff. *See* Wood Decl., ¶ 7. The call recordings include no advisement that the call would be recorded. *Id*.

**B. ECMC's Use of Noble's Non-Mandatory Message During the Class Period**

ECMC has acknowledged that it only used one prerecorded message during the Class Period to advise incoming callers that the call would be recorded. *See* Ex. 1, Mott Dep. at 52:9-53:9. Outside of a call transfer, ECMC has no policy for the agents

---

[6] Plaintiff original class included inbound calls commencing from one year prior to the filing of Plaintiff's Complaint on March 20, 2015. However, after this lawsuit was served on ECMC, ECMC destroyed records from March 20, 2014 to August 1, 2014, in violation of its duty to preserve relevant evidence and also in violation of its own policies and procedures. *See* Ex. 1, Mott Dep. at 122:10-124:11; 124:19-23 (Defendant acknowledging it was "asked for additional information and realized at that time[]" no litigation hold was in place); 129:3-11. At the appropriate time, Plaintiff will ask the Court to impose evidentiary and/or issue sanctions against ECMC. *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D. N.Y. 2004).

themselves to warn callers that the call would be recorded. *Id*. at 30:21-31:19, 32:3-10. ECMC agents are only instructed to advise callers that the call is recorded on *outbound* calls. *Id*. at 30:2-14. The prerecorded message utilized by ECMC during the Class Period stated: "Thank you for calling ECMC. This call is being recorded. Please hold while we connect you to an available representative." *Id*. at 33:6-9.  ECMC calls this message its "opening message." *Id*. at 52:12-18. The Noble dialer provides ECMC with the option to play this message as a mandatory message or a non-mandatory messages. *Id*. at 65:2-16, Ex. 5. ██████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████ *Id*. ██████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████ *Id*. ██████████████

In order for the opening message to be played as a mandatory message, ██████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████ *See* Ex. 1, Mott Dep. at 81:11-23, 89:7-90:10, Exs. 6-7. ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████ *See* Ex. 1, Mott Dep. at 101:15-20, Exs. 5-6.

During the deposition of Derrell Mott, ECMC admitted[7] that during the Class Period 13 inbound lines, including the inbound line which Plaintiff called, were erroneously set to ████████████████████████████████████████████████ in the Info field. *See* Ex. 1, Mott Dep. at 96:17-99:12, 101:15-20.  Thus, during the Class Period, the opening message played as a non-mandatory message which could be

---

[7] Defendant finally made this admission after nearly two years of discovery and after first providing contrary testimony.  *See* Ex. 1, Mott Dep. at 66:23-67:6.

completely by-passed if an agent was available. *See* Ex. 5. Thus, those 13 inbound lines were not properly set up to warn callers that the call would be recorded.

After the filing of this lawsuit on March 20, 2015, ECMC issued an internal policy with an effective date of April 1, 2015.  *See* Ex. 1, Mott Dep. at 89:7-92:5, 93:15-22; Ex. 7. The procedure was to ensure that call routing settings for inbound phone numbers that go directly into the Noble dialer play the opening message in its entirety before being routed to an agent. Additionally, ECMC Servicing Guidelines were amended to include a section entitled "Call is Recorded" Disclosure. *See* Exs. 8-14.[8]

### C. Mr. Reyes' Telephone Calls to ECMC

On February 5, 2015, Plaintiff called ECMC twice using his cellular telephone from his home in San Diego, California. *See* Declaration of A.J. Reyes ("Reyes Decl."), ¶ 4; Ex. 1, Mott Dep. at 134:20-22; Exs. 3 & 4.  The number Plaintiff called was (866) 945-6305.  *See* Reyes Decl., ¶ 4; Ex. 1, Mott Dep. at 144:21-145:1, 145:24-146:3; Exs. 4 & 15 at 4. During these conversations ECMC's agents discussed confidential information with Plaintiff, including but not limited to: personal identification information, income, expenses, and existence of debt allegedly owed by Plaintiff and other legal and financial matters. *See* Reyes Decl., ¶ 6. During these calls, Plaintiff was not routed to any prerecorded message advising that the call would be recorded.  *See* Reyes Decl., ¶ 4. Instead, on both calls, Plaintiff was connected to a live agent.  *Id.*  During both inbound calls by Plaintiff, the number that Plaintiff called into was set to a non-mandatory message.  *See* Ex. 1, Mott Dep. at 143:20-144:6, 144:21-145:1, 145:22-146:12.  ECMC's agents did not advise Plaintiff that the calls were being recorded and Plaintiff was completely unaware that ECMC was recording the calls.  *See* Reyes Decl., ¶ 7.

### D. ECMC Has No Records of Consent

ECMC has failed to produce any consent evidence for a single person in Plaintiff's Class who was provided with the recorded opening message before being connected to a

---

[8] Despite the creation of these policies in response to this suit, ECMC failed to provide Plaintiff with this information when requested and instead provided deceptive responses to discovery and a misleading declaration. Dkt. No. 72-7 at 3-5; Dkt. No. 25-2 at ¶ 27.

*Reyes v. Educational Credit Management Corp.*, No. 15cv628
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION

live representative. While Defendant has produced a standalone prerecorded message which advises that a call will be recorded, because Defendant's recording of each call does not allegedly begin until after that prerecorded message is played, Defendant has no evidence the message was actually played to incoming callers. Further, after almost two years of discovery, ECMC has only been able to hand-pick and produce one incoming phone call,[9] of a potential non-Class member, wherein an agent by chance, as it is not an ECMC policy, advised the caller that the call was being recorded.  *See* Ex. 1, Mott Dep. at 114:23-115:13; Wood Decl., ¶ 20.

# III.   LEGAL CONTEXT

### A.    The Statutory Provisions

This motion seeks certification of a class that asserts claims against ECMC based on California Penal Code § 632.7, which provides in pertinent part:

**§ 632.7 Eavesdropping on and recording of communications transmitted between cellular or cordless telephones; Punishment**

---

[9] Defendant produced four recordings in response to Plaintiff's request for production of documents which requested "all documents and ESI that you contend represents consent to be recorded provided by the incoming caller to any of your telephone numbers during the relevant time period wherein you utilized a non-mandatory message advising callers that the call would be recorded." *See* Ex. 16 at 4.  In Defendant's response, Defendant indicated the recordings were from a "sampling," but following meet and confer efforts in which Plaintiff's counsel requested the sampling protocol be provided, Defendant's counsel confirmed they were hand-picked and no protocol was used. *See* Wood Decl., ¶ 20.  Of the four recordings, two are from outbound calls which are not relevant, and one of the inbound calls provides the warning that the call is recorded only after the caller has provided confidential information including a social security number.  *Id.* Furthermore, that caller is not from California.  *Id.*  Last, regarding the only inbound call where the caller is advised at the onset of the call, Defendant has not verified whether the caller is a member of Plaintiff's Class (i.e., called into from a California area code or called into one of 13 of Defendant's inbound lines that failed to use a mandatory disclosure.) Further, despite being designated as most knowledge regarding Defendant's discovery responses, Mr. Mott was not familiar with the recordings produced, could not provide the source of these recordings, and did not know their relevance to the case. *See* Ex. 1, Mott Dep. at 112:20-113:22, 114:23-115:13; Ex. 2 at p. 4.

---

7

(a)    Every person who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in a county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment.

Civil remedies for violation of § 632.7 are set forth in § 637.2, which provides:

**§ 637.2 Damages; Injunctive Relief**

(a)    Any person who has been injured by a violation of this chapter may bring an action against the person who committed the violation for the greater of the following amounts:

(1) Five thousand dollars ($5,000).
(2) Three times the amount of actual damages, if any, sustained by the plaintiff.

(b) Any person may, in accordance with Chapter 3 (commencing with Section 525) of Title 7 of Part 2 of the Code of Civil Procedure, bring an action to enjoin and restrain any violation of this chapter, and may in the same action seek damages as provided by subdivision (a).

(c) It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages.

These sections are an integral part of CIPA.  As the Legislature explained in the statute's preamble, CIPA was enacted for the explicit purpose of protecting privacy rights:

The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot

*Reyes v. Educational Credit Management Corp.*, No. 15cv628
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION

be tolerated in a free and civilized society. The Legislature by this chapter intends to protect the right of privacy of the people of this state.

Cal. Penal Code § 630.

### B.   Judicial Application of CIPA

California courts have affirmed the important role that CIPA plays in protecting privacy rights. The California Supreme Court has described the legislative purpose of CIPA as "accord[ing] [to] every citizen's privacy the utmost sanctity." *Ribas v. Clark*, 38 Cal.3d 355, 365 (1985). A California appellate court has noted that every invasion of privacy is an affront to human dignity, and that CIPA is "fairly read as establishing that no violation of the privacy act is to go unpunished." *Friddle v. Epstein*, 16 Cal. App. 4th 1649, 1660-61 (1993).

The California Supreme Court has declared that California has a "strong and continuing interest in the full and vigorous application" of the provisions that prohibit "the recording of telephone conversations without the knowledge or consent of *all* parties to the conversations." *Kearney,* 39 Cal. 4th at 126 (2006) (italics in original). In *Kearney*, the Court explained that if a company wants to record calls as part of its routine business activity, it can avoid liability by giving an appropriate warning at the beginning of each call. *Id.* at 118 ("A business that adequately advises all parties to a telephone call, at the outset of the conversation, of its intent to record the call would not violate the provision."). The *Kearney* opinion expressly placed out-of-state companies who do business in California on notice that, "with regard to future conduct, they are subject to California law with regard to the recording of telephone conversations made to or received from California, and that the full range of civil sanctions afforded by California law may be imposed for future violations." *Id*. at 130-131.

### C.   Elements of the Section 632.7 Claim

Section 632.7 is one of two provisions that require all-party consent before a telephone call may be recorded. The other one, section 632, differs from section 632.7 in several respects. One difference is that whereas section 632 applies to both in-person

9

*Reyes v. Educational Credit Management Corp.*, No. 15cv628
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION

conversations and telephone calls, section 632.7 is limited to telephone calls that involve at least one cell phone or cordless phone. *See Flanagan v. Flanagan*, 27 Cal. 4th 766, 776 (2006) (section 632.7 "protect[s] the privacy of parties to calls involving cellular or cordless telephones."); *Roberts v. Wyndham Int'l, Inc.,* No. 12-cv-5180-PSG, 2012 WL 6001459, at *4 (N.D. Cal. Nov. 30, 2012) (allegation that the communication "involv[ed] at least one cellular phone" is within the ambit of section 632.7).

Another difference is that whereas section 632 protects only "confidential communication[s]" (as that term is defined in judicial opinions), section 632.7 has no such limitation. *Flanagan*, 27 Cal. 4th at 776 (section 632.7 "[p]rotect[s] against interception or recording of *any* communication.") (italics in original); *Young v. Hilton Worldwide, Inc.*, 565 F. App'x 595, 596 (9th Cir. 2014) (unpublished) ("The California Supreme Court has unequivocally held that no such [confidential communication] requirement applies to § 632.7," and "[t]he district court's failure to so recognize was reversible error."); *Brown v. Defender Security Co.*, No. CV 12-7319-CAS (PJWx), 2012 WL 5308964, at *5 (C.D. Cal. Oct. 22, 2012) (section 632.7 "grants a wider range of protection to conversations where one participant uses a cellular phone or cordless phone"). For that reason, here, Plaintiff has opted to seek certification of a narrower class for a claim based only on section 632.7, for which there is no "confidential communication" element which can lead to individualized inquires. *See Torres v. Nutrisystem, Inc.*, 289 F.R.D. 587, 591-93 (C.D. Cal. 2013) (holding that "to determine whether each class member had an expectation of confidentiality would require a detailed factual inquiry into the circumstances of each call.")

## IV. <u>ARGUMENT</u>

"Class actions have two primary purposes: (1) to promote judicial economy by avoiding multiple suits; and (2) to protect the rights of persons who might not be able to present claims on an individual basis." *Stern v. AT&T Mobility Corp.*, No. CV 05-8842 CAS (CTx), 2008 WL 4382796, at *2 (C.D. Cal. Aug. 22, 2008) (quoting *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 647 (C.D. Cal. 1996) (citing *Crown, Cork & Seal Co.*

10

*Reyes v. Educational Credit Management Corp.*, No. 15cv628
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION

*v. Parking*, 462 U.S. 345 (1983))). In ruling on a motion for class certification, the Court must determine, without prejudging the merits of the claims or defenses, whether plaintiff's theory of recovery is amenable to class treatment. *See United Steel v. ConocoPhillips Co.*, 593 F.3d 802, 808-09 (9th Cir. 2010). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) ("*Dukes*")).

   "To certify a class action, plaintiffs must set forth prima facie facts that support the four requirements of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality; and (4) adequacy of representation." *Stern*, 2008 WL 4382796, at *3 (citing *In re Mego Fir. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000)). Additionally, at least one of the criteria in Rule 23(b) must be satisfied. *Stern*, 2008 WL 4382796, at *3; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Rule 23(b)(3) certification is appropriate "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022 (citing 7A Wright & Miller, *Federal Practice & Procedure* § 1777 (2d ed. 1986)). "To qualify under this subsection, the class must satisfy two conditions in addition to the Rule 23(a) prerequisites: common questions must 'predominate over any questions affecting only individual members,' and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Hanlon*, 150 F.3d at 1022. "To certify a (b)(2) class, we must find 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Raffin v. Medicredit, Inc.*, No. CV154912GHKPJWX, 2017 WL 131745, at *9 (C.D. Cal. Jan. 3, 2017) (quoting Fed. R. Civ. P. 23(b)(2)).  Certification is appropriate if the Rule 23 prerequisites are established by a preponderance of the evidence. *See Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1302 (D. Nev. 2014).

*Reyes v. Educational Credit Management Corp.*, No. 15cv628
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION

Courts in the Ninth Circuit have recently certified very similar class actions based on unlawful monitoring of calls under CIPA. *See Raffin*, 2017 WL 131745, at *9 (concluding that defendant's recording policy did not comply with the requirement to first inform the parties to the conversation that the conversation is being recorded and as every putative class member was subject to this policy on a uniform basis, determining consent to record can be accomplished without resort to individualized proof); *Ades v. Omni Hotels Management Corp*., No. 2:13-cv-02468-CAS (MANx), 2014 WL 4627271, at *6-8 (C.D. Cal., Sept. 8, 2014) (finding that even though identifying class members presented serious difficulties as defendant maintained no information on the identity of individuals they recorded, that the class was ascertainable, and granted certification).

A California Court also certified a class action for violation of CIPA in *Kight v. CashCall, Inc.*, 200 Cal. App. 4th 1377 (Cal. App. 4th Dist. 2011). In *Kight* the Court certified a class consisting of "All persons that were physically in California at the time they had telephone conversations in which defendant [CashCall], its employees, contractors, agents or other persons working on [CashCall's] behalf, monitored … such conversations, within one year prior to May 16, 2006, the date of filing of the original Complaint." *Id*. at 1384. Although the lower court on remand decertified the § 632 class on the basis of an individualized inquiry, Plaintiff brings a claim under § 632.7, which does not require the communication to be "confidential." *Kight v. CashCall, Inc*., 231 Cal. App. 4th 112, 117 (2014).

Additionally, similar to Plaintiff's facts, this Court, in granting preliminary approval, certified a class for settlement purposes in the matter *McDonald v. Bass Pro Outdoor World, LLC*, No. 13-CV-889-BAS DHB, 2014 WL 3867522, at *5 (S.D. Cal. Aug. 5, 2014) wherein this Court found that the alleged conduct that violated CIPA was the defendants' standard policy prior to the commencement of the lawsuit and throughout the class period and that the relationship between any common and individual issues were sufficiently cohesive in order to satisfy Rule 23(b)(3)'s predominance requirement.

12

*Reyes v. Educational Credit Management Corp.*, No. 15cv628
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN support OF MOTION FOR
CLASS CERTIFICATION

### A. Ascertainability is Not a Requirement in the Ninth Circuit, but Plaintiff Meets this Standard Anyway

In the Ninth Circuit, "class proponents are not required to demonstrate that there is an administratively feasible way to determine who is in the class in order for the class to be certified." *Meyer v. Bebe Stores, Inc.,* No. 14-CV-00267-YGR, 2017 WL 558017, at *3 (N.D. Cal. Feb. 10, 2017) (citing *Briseno v. ConAgra Foods, Inc.,* 844 F.3d 1121, 1126 (9th Cir. 2017)). "In so holding, the Ninth Circuit explained that Rule 23's 'enumerated criteria already address the policy concerns that have motivated some courts to adopt a separate administrative feasibility requirement, and do so without undermining the balance of interests struck by the Supreme Court, Congress, and the other contributors to the Rule." *Meyer*, 2017 WL 558017, at *3 (citing *Briseno*, 844 F.3d at 1123). In *Briseno*, the Ninth Circuit explained that "[r]equiring plaintiffs to propose a mechanism for eventually determining whether a given class member is entitled to damages is different from requiring plaintiffs to demonstrate an administratively feasible way to identify *all* class members at the certification stage." *Briseno*, 844 F.3d at 1124 n.3 (emphasis in original). Moreover, at "the claims administration stage, parties have long relied on claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court to validate claims." *Briseno*, 844 F.3d at 1131 (citations omitted).

Although not required for certification, here, the proposed class definition sets forth objective criteria by which individuals can identify themselves as members of the Class. Mr. Reyes is a member of the Class. *See* Reyes Decl., ¶¶ 2-7. His cellphone number appears on ECMC inbound call list and publicly-available telecommunications databases confirm that his calls were from a cellular phone with a California area code. *Id.* at 8; Hansen Decl., ¶¶ 20-21.

In addition to enabling self-identification by Class members, the proposed Class definition enables Class members to be identified administratively through several sources. ECMC's inbound call lists will identify each California telephone number that placed a call to the 13 inbound call lines that did not use a mandatory disclosure during

the Class Period. Class members can be identified using their account number and corresponding address listed in ECMC's records.  Alternatively, if no address exists in ECMC's records, for example for the few non-account holders which may have called an inbound line, addresses can be determined via reverse look-up directories. Considering the range of information sources available, the proposed Class definition describes an ascertainable class. *See, e.g.*, *Kristensen*, 12 F. Supp. 3d at 1303 (data from cell phone carrier calling list could be used to identify class members who were sent text messages, and class members could identify themselves from the class definition); *Savanna Grp., Inc. v. Trynex, Inc*., No. 10-cv-7995, 2013 WL 66181, at *3 n.1 (N.D. Ill. Jan 4, 2013) (list of 13,946 unique fax numbers to which the faxes were sent, together with evidence that the plaintiff's fax number was included on that list, demonstrated the class was ascertainable).

**B. The Proposed Class Satisfies Rule 23(a)'s Requirements**

The proposed Class satisfies each of Rule 23(a)'s prerequisites to certification. As explained below, the proposed Class includes thousands of Californians (numerosity) who share several common legal and factual questions that can be answered for the Class as a whole based upon common proof (commonality). Plaintiff's claims are also typical of those of the other Class members (typicality), and he and his counsel are more than adequate to represent the interests of the absent members of the Class (adequacy).

1.   **The Class consists of thousands of individuals**

First, Rule 23(a)(1) requires that a class be so numerous that "joinder of all members [would be] impracticable." Fed. R. Civ. P. 23(a)(1).  As a general rule, classes numbering greater than 40 individuals satisfy the numerosity requirement. *See Stern*, 2008 WL 4382796, at *5. Where "general knowledge and common sense" indicate that the class is large, the numerosity element is satisfied. *See* 1 Newberg & Conte, Newberg on Class Actions, §3.3 (4th ed. 2002). Here, Plaintiff's expert was able to determine that between August 2, 2014 and March 31, 2015, Defendant recorded 2,795 incoming calls to ECMC's 866-945-6305 number from cell phones with California area codes,

14

*Reyes v. Educational Credit Management Corp.*, No. 15cv628
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION

representing 1,829 unique numbers. *See* Hansen Decl., ¶ 21. This number does not even take into account all of the other incoming calls from California area code cellphones that were recorded on Defendant's other 12 lines that did not utilize a mandatory disclosure during the Class period. Thus, numerosity is easily satisfied.

### 2. **Class members share common issues of law and fact**

Next, Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury[,]'" *Dukes*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 157 (1982)), however, "[a]ll questions of law and fact need not be common to satisfy the rule." *Hanlon*, 150 F.3d at 1019. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* The common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2545. Moreover, "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008). "An issue is common if (1) it is susceptible to generalized, class-wide proof; or (2) if the same evidence will suffice for each member to make a prima facie showing of that issue." *Kristensen*, 12 F. Supp. 3d at 1306. A single common issue is sufficient. *See Dukes*, 131 S. Ct. at 2556.

While only one question of law or fact is required, here there are many issues common to the proposed class, including: (1) whether ECMC had a policy and practice to record all inbound Calls; (2) whether ECMC utilized Noble's non-mandatory disclosure on inbound lines between August 2, 2014 through March 31, 2015; (3) whether ECMC had a policy to verbally advise inbound callers (non-transferred) that calls are recorded; (4) whether the callers consented to the recording; and (5) the monetary and injunctive remedies to which Class members are entitled. On all of those

15

*Reyes v. Educational Credit Management Corp.*, No. 15cv628
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION

issues, utilizing the same evidence discussed above in Section II, Plaintiff can "advance a viable theory employing generalized proof to establish liability with respect to the class involved." *Kristensen*, 12 F. Supp. 3d at 1306 (citing *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 328 (5th Cir. 2008)). This Court in *McDonald v. Bass Pro Outdoor World, LLC*, found that commonalty was satisfied at the preliminary approval stage because factually "all class members were allegedly the subject of undisclosed recording by Defendants of telephone calls made to or received from California residents without their consent." 2014 WL 3867522, at *4. This Court also found for commonality because "class members also share[d] a common legal issues: whether Defendants' alleged recording of telephone calls violated [CIPA]." *Id*. Plaintiff's case is no different, such that ECMC's policy to record all inbound calls and its use of a non-mandatory disclosure, gives raise to several common questions, the answers to which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551. In short, common questions loom over this case, any one of which alone satisfies Rule 23(a)(2). *See Dukes*, 131 S. Ct. at 2562 (noting that "even a single common question will do") (citation and internal quotations omitted).

### 3.   **Plaintiff's claims are typical of the proposed Class**

Next, Rule 23(a)(3) requires that a putative class representative have "claims or defenses that are typical of the claims or defenses of the class." *See* Fed. R. Civ. P. 23(a)(3). A class representative's claims are typical if they are "reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *see also* 8 Newberg on Class Actions, § 24.25 (4th ed. 2013) (typicality "does not mean that the claims of the class representative[s] must be identical or substantially identical to those of the absent class members."). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation and citation omitted).

*Reyes v. Educational Credit Management Corp.*, No. 15cv628
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION

Here, Plaintiff's claims are typical of the claims of other Class members because they derive from ECMC's recording of incoming calls from cellphones without consent. "Like other class members, Plaintiff's claim is that his telephone conversation with Defendants' customer service representatives were recorded without his consent." *McDonald*, 2014 WL 3867522, at *4. "Thus, Plaintiff and the class members assert the same violation of the [CIPA]." *Id.; see Raffin*, 2017 WL 131745, at *4 (finding typicality in CIPA case where "it [was] undisputed that [plaintiff] spoke to [defendant's] representative within the class period, her call was recorded, and she was never given a recording advisory."); *Ades*, 2014 WL 4627271, at *9 (finding typicality where plaintiffs' claims were "'reasonably co-extensive' with those of other putative class members" because "[t]hey allege a course of conduct by [defendant] common to the class, and privacy invasions typical to those of the class generally.")

### 4. **Plaintiff and Proposed Class Counsel will continue to fairly and adequately protect the interests of the proposed Class**

Finally, Rule 23(a)(4) requires that the representative plaintiff "will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). "Adequate representation is usually presumed in the absence of contrary evidence." *Tourgeman v. Collins Fin. Servs.*, No. 08-CV-1392 JLS (NLS), 2011 WL 5025152, at *13 (S.D. Cal. Oct. 21, 2011). "Resolution of two questions determines legal adequacy: (1) [whether] the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) [whether] the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class[.]" *Hanlon*, 150 F.3d at 1010 (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

Plaintiff readily meets the adequacy requirement. As noted above, Mr. Reyes has suffered the same injury as his fellow Class members; he does not have any interests that are antagonistic to those of the other class members; and he has demonstrated his commitment to pursuing his claims on the Class' behalf by assisting his attorneys with the investigation of this matter and preparation of his complaint, providing his attorneys with documentation to support his claims, assisting in discovery, and otherwise being

17

actively involved in all aspects of the litigation. *See* Reyes Decl., ¶¶ 9-11.  Thus, through his continued participation in the case, Mr. Reyes more than satisfied the adequacy requirement.  *Hanlon*, 150 F.3d at 1010.

As to Rule 23(g)'s requirement that a court certifying a class also appoint class counsel, Proposed Class Counsel—Ronald A. Marron, Alexis M. Wood and Kas L. Gallucci of the Law Offices of Ronald A. Marron—easily satisfy the adequacy requirement. Plaintiff's counsel are well qualified attorneys with substantial class action experience, including the handling of other Privacy Act cases. *See* Marron Decl. generally.

### C. The Proposed Class Satisfies Rule 23(b)(3)'s Requirements

In addition to Rule 23(a)'s requirements, the proponent of class certification must show that a proposed class falls within at least one of the three subsections of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). In addition to seeking certification under 23(b)(2), which is discussed below, Plaintiff seeks certification of the Class under Rule 23(b)(3), which provides for class treatment where: (1) questions of law and fact common to the class predominate over any questions affecting only individuals, and (2) the class action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy. *See* Fed. R. Civ. P. 23(b)(3); *Pierce v. County of Orange*, 526 F.3d 1190, 1197 n.5 (9th Cir. 2008). Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be best served by settling their differences in a single action." *In re Ferrero Litig.*, 278 F.R.D. 552, 559 (S.D. Cal. 2011).

### 1.  <u>Common questions of law and fact predominate</u>

The predominance requirement of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997), and is met where the common questions of law or fact "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).  Predominance tests the balance between common questions, where "the

18

*Reyes v. Educational Credit Management Corp.*, No. 15cv628
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION

same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof," and individual ones, which call for "evidence that varies from member to member." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citations and internal quotations omitted). Thus, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling a dispute on a representative rather than on an individual basis." *In re Infineon Tech. AG Sec. Litig.*, 266 F.R.D. 386, 395 (N.D. Cal. 2009).

Although determining whether questions of law or fact predominate "begins, of course, with the elements of the underlying cause of action," *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011), "proving predominance does not require plaintiffs to prove that every element of a claim is subject to classwide proof: they need only show that common questions predominate over questions affecting only individual class members." *In re: Cathode Ray Tub (CRT) Antitrust Litig.*, 308 F.R.D. 606, 612 (N.D. Cal. 2015) (citing *Amgent Inc. v. CT Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013)). The predominance requirement "is satisfied when a common nucleus of facts and law is the central feature of the litigation, and when 'Plaintiffs have shown there are plausible classwide methods of proof available to prove their claims.'" *Bee, Denning, Inc. v. Cap. Alliance Grp.*, 310 F.R.D. 614, 628 (S.D. Cal. 2015) (quoting *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 487 (N.D. Cal. 2011)).

Here, common issues that are subject to class-wide proof predominate over any possible issues that could involve individualized proof. Based on the evidence discussed in Section II, the Class can establish a prima facie case, by a preponderance of the evidence, that the calls were recorded, and that because ECMC had inappropriately set the opening message to a non-mandatory message on 13 of its incoming lines, Class members were not being warned that their calls would be recorded, and they were thus not given the opportunity to consent to the recording. *See Raffin*, 2017 WL 131745, at *9 (finding predominance "[b]ecause every putative class member was subject to

[Defendant's non-compliant] policy on a uniform basis," thus "determining consent to record can be accomplished without resort to individualized proof.")

ECMC will, of course, have an opportunity to introduce whatever admissible evidence it might have to show that that a particular caller gave consent. But at this point, almost two years into the litigation, there is no evience that any Class member was provided an opening message or gave consent. In analogous circumstances, courts have found that the consent issue is a common one that supports a finding of predominance. *See Ades*, 2014 WL 4627271, at *12 ("there is no indication that individual consent issues will overwhelm issues plaintiffs have shown to be resolvable through classwide proof.") *See, e.g., Meyer v. Portfolio Recovery Assocs., LLC,* 707 F.3d 1036, 1042 (9th Cir. 2012); *Kristensen*, 12 F. Supp. 3d at 1307 ("[C]ourts should ignore a defendant's argument that proving consent necessitates individualized inquiries in the absence of any evidence that express consent was actually given."); *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 567-568 (W.D. Wash. 2012) (mere "speculation that [proposed class members] may have given their express consent to receive [calls] is not sufficient to defeat class certification.") As Plaintiff has defined the Class in a narrow fashion that avoids the presence of any individual issues, the numerous common issues facing the Class predominate.

## 2. <u>A class action is the superior method for resolving this case</u>

Rule 23(b)(3)'s superiority requirement seeks to assure that a class action is the "most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168, 1175–76 (9th Cir. 2010). "A class action may be superior where 'class-wide litigation of common issues will reduce litigation costs and promote greater efficiency.'" *Stern*, 2008 WL 4382796, at *13 (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996)). "Requiring class members to pursue individual actions would potentially produce lawsuits numbering in the ten of thousands." *McDonald*, 2014 WL 3867522, at *5. "That would be both impractical and inefficient. Such individual litigation would consume judicial resources, impose

1 additional burdens and expenses on the litigants, and present a risk of inconsistent
2 rulings." *Id.*

3      In assessing the desirability of class-wide litigation, the Court considers the
4 following factors: "(A) the class members' interests in individually controlling the
5 prosecution or defense of separate actions; (B) the extent and nature of any litigation
6 concerning the controversy already begun by or against class members; (C) the
7 desirability or undesirability of concentrating the litigation of the claims in the particular
8 forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P.
9 23(b)(3)(A)–(D).  Other considerations can include whether class members do not know
10 their rights were violated, whether they have a monetary incentive to individually litigate
11 their rights, and whether they are able to hire competent counsel to protect their rights.
12 *Sledge v. Sands*, 182 F.R.D. 255, 259 (N.D. Ill. 1998).

13        (a)    <u>It would be prohibitively expensive for individual plaintiffs to</u>
<u>prosecute their CIPA claims</u>

14     "[T]he Legislature evidently decided that minimum damages of $5,000 per
15 violation serve CIPA's purposes and are proportional to the harm caused by CIPA
16 violations." *Ades*, 2014 WL 4627271, at *14 (C.D. Cal. Sept. 8, 2014).  "Plaintiffs' action
17 is not the first class action to be filed under § 637.2, and the Legislature could have acted
18 to limit damages in response to any concerns about the liability sought in previous class
19 actions." *Id.*  In *Ades,* the court was "not persuaded that $5,000 in damages is so clearly
20 sufficient to motivate individual litigation involving complex factual and legal issues as
21 to weigh against class certification." *Id.; see also Raffin*, 2017 WL 131745, at *9.  Thus,
22 a class action is superior to the only other theoretical alternative— thousands of separate
23 cases litigated from start to finish. The court's explanation in *Stern* is equally applicable
24 to the instant case: superiority is satisfied because the relatively small amount of money
25 at stake for individual class members makes it unlikely that they have the financial
26 incentive to litigate individually; there is no evidence of any other litigation involving
27 the subject claims; there is no reason to believe that the Southern District is an
28 undesirable forum; and a class action will be manageable. *See Stern*, 2008 WL 4382796,

1   at \*13-14; *see also McKenzie v. Fed. Ex. Corp.*, 275 F.R.D. 290, 301 (C.D. Cal. 2011)

2   (finding a statutory damages of $4,000 per class member to be "not large").

3          There no question a class action is the superior method for resolving the

4   controversy here. Plaintiff's and the Class's claims involve identical violations of the

5   CIPA and are subject to generalized proof. Moreover, absent a class action, most

6   members would find the cost of litigating their claims, which are statutorily limited to a

7   maximum of $5,000 per illegal call, to be prohibitive. To be sure, given the small amount

8   of damages relative to the resources necessary to litigate these claims, it is unlikely any

9   significant number of Class members would be able to obtain redress for ECMC's

10  misconduct, or that ECMC would be deterred from proceeding with that same conduct.

11         By way of example, Mr. Reyes has litigated this matter for almost two years,

12  served several sets of written discovery requests, taken the deposition of Defendant's

13  30(b)(6) designee, engaged in extensive discovery motion practice, served a subpoena

14  on Noble Systems, and engaged an expert. *See* Wood Decl., ¶ 21. Thus, the idea that an

15  individual plaintiff could take on such tasks, which have been absolutely necessary to the

16  prosecution of the case, is not realistic. *See, e.g., Murray v. GMAC Mortgage Corp.*, 434

17  F.3d 948, 953 (7th Cir. 2006) ("When a few class members' injuries prove to be

18  substantial, they may opt out and litigate independently. Only when all or almost all of

19  the claims are likely to be large enough to justify individual litigation is it wise to reject

20  class treatment altogether.") (citations omitted).

21               (b)    No other litigation has commenced

22         The superiority requirement "is [also] intended to serve the purpose of assuring

23  judicial economy and reducing the possibility of multiple lawsuits." *Zinser,* 253 F.3d at

24  1191 (citation and internal quotation marks omitted). Thus, a class action may be

25  inappropriate if multiple actions are already pending due to the risk of inconsistent

26  judgments. *Id.* The prior existence of multiple suits could also signal that individual

27  actions are sufficient. *Id.* Here, there are no other cases pending against ECMC for its

28  unlawful recording of inbound calls; thus, this factor supports certification.

22

*Reyes v. Educational Credit Management Corp.*, No. 15cv628
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN support OF MOTION FOR
CLASS CERTIFICATION

(c)   <u>Desirability of concentrating litigation to this forum</u>

Further, "it is desirable to concentrate claims in a particular forum when that forum has already handled several preliminary matters." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1251 (11th Cir. 2004), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 533 U.S. 639 (2008). Thus, because this case has been pending for almost two years in this District, with a motion for summary judgment decided by this Court and a discovery motion decided by The Honorable Jan M. Adler, continued litigation in this forum is superior to litigation dispersed throughout the country. *See also Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 510–11 (S.D. Tex. 2004).

(d)   <u>Management difficulties do not exist</u>

"The Ninth Circuit, along with at least seven other circuits, has held that there is a presumption against dismissing a class action on manageability grounds or that such dismissals or typically disfavored." *Fraser v. Wal-Mart Stores, Inc.*, No. 13-cv-520, 2014 WL 7336673, at *8 (E.D. Cal. Dec. 24, 2014) (collecting authorities); *compare Zinser*, 253 F.3d at 1192 (only "when the complexities of class action treatment outweigh the benefits of considering common issues in one trial, [is] class action treatment [] not the 'superior' method of adjudication.") (citations omitted).

In any event, the management of this class action "would create relatively" fewer, rather than "more[,] management problems than any other alternative." *Demmick v. Cellco P'ship*, No. 06-cv-2163, 2010 WL 3636216, at *10 (D.N.J. Sept. 8, 2010). The class device will allow thousands of individuals to resolve their disputes with ECMC in a single proceeding, on the basis of the same evidence that would otherwise have to be presented time and again in individual actions. Said differently, although there are thousands of telephone calls at issue, a class trial will not present any unusual manageability issues. The key evidence in this case—on both liability and damages—can be presented through a relatively small number of witnesses, and most of whom would have to testify anyway even if the case involved a small number of calls by a few individual plaintiffs. Plaintiff anticipates introducing testimony of several ECMC

23

*Reyes v. Educational Credit Management Corp.*, No. 15cv628
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION

personnel, primarily concerning the policies and practices during the Class Period and ECMC's records concerning the calls at issue; an expert witness who can testify about the number of qualifying calls made by Class members; and the Class Representative (and perhaps a small number of other class members if the Court believes it would be helpful). There are unlikely to be *any* liability issues that would require individualized evidence from Class members, and in view of the fixed per call statutory damage amount, the damages calculation is straightforward. And, the class notice process (and judgment distribution process, should it come), will be administratively simple, as ECMC's own records provide the information necessary to contact Class member.

To the extent ECMC has admissible evidence concerning a Class member that ECMC contends was told about the recording and consented to it, ECMC would have an opportunity to present that evidence as part of its defense case. However, given the evidence and testimony elicited to date, that prospect seems highly unlikely.

### E. Certification Under 23(b)(2) is Appropriate

Certification under Rule 23(b)(2)[10] requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b). What is clear is that ECMC records all calls and employed a practice that allowed for incoming calls to be recorded without any warning to the call, which not only caused harm to Plaintiff, but caused and can continue to cause identical harm to thousands of others. *See Raffin*, 2017 WL 131745, at *9 (finding the plaintiff satisfied Rule 23(b)(2)'s requirements "[b]ecause [defendant]'s policy of recording conversations without first informing all parties that the conversation is being recorded applies to the entire class, any injunction would also apply to the entire class.")

"A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." *Raffin*, 2017 WL 131745, at * 10 (quoting *Friends of the*

---

[10] Rule 23(b)(2) classes "need not meet predominance and superiority requirements." *Gates v. Rohm and Haas Co.*, 655 F.3d 255, 263-64 (3rd Cir. 2011).

*Reyes v. Educational Credit Management Corp.*, No. 15cv628
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION

*Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 174 (2000)). "Voluntary cessation will moot a case only where 'subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Raffin*, 2017 WL 137145, at *10 (quoting *Friends of the Earth, Inc.*, 528 U.S. at 189). "The party asserting mootness has a 'heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again.'" *Raffin*, 2017 WL 131745, at *10 (quoting *Friends of the Earth, Inc.*, 528 U.S. at 189).

An order requiring ECMC to provide a warning at the onset of all incoming calls that the call will be recorded will cure the deficiency in Defendant's current policy and protect consumers.  While true ECMC created a *written*[11] policy after Plaintiff filed his lawsuit requiring that the Noble dialer play a mandatory advisement prior to being routed to an agent, there is no assurance that it will continue to employ such procedure as the policy is predicated on Defendant's continued use of the Noble dialer and assumption that Defendant will not add or change dialing systems. *See* Ex. 7. Therefore, here class certification under Rule 23(b)(2) is necessary and appropriate.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order certifying the proposed Class pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3); appointing him as class representative; appointing The Law Offices of Ronald A. Marron as class counsel; and entering any other relief as the Court deems reasonable and just.

DATED:  February 24, 2017          Respectfully submitted,

                                   */s/ Alexis M. Wood*
                                   By: Alexis M. Wood
                                   **LAW OFFICES OF RONALD A. MARRON**

---

[11] Defendant has maintain that although no written policy existed to utilize the mandatory message, Defendant did have a verbal policy that the opening message be set to mandatory on all lines. Ex. 1, Mott Dep. at 93:15-95:1. However, for 13 of its incoming phone lines, such policy was neglected and not discovered until after Plaintiff filed his lawsuit. *Id*. at 96:17-99:12, 101:15-20.

*Reyes v. Educational Credit Management Corp.*, No. 15cv628
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION

RONALD A. MARRON
ALEXIS WOOD
KAS GALLUCCI
651 Arroyo Drive
San Diego, California 92103

**LAW OFFICES OF DANIEL G. SHAY**
DANIEL SHAY (SBN 250548)
*DanielShay@TCPAFDCPA.com*
409 Camino Del Rio South, Suite 101B
San Diego, California 92108

***Attorneys for Plaintiff and the Proposed Class***