**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AJ REYES, *individually and on behalf of all others similarly situated*, | Case No. 15-cv-00628-BAS-AGS |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |
| v. | **[ECF No. 76]** |
| EDUCATIONAL CREDIT MANAGEMENT CORPORATION, | |
| Defendant. | |

Plaintiff AJ Reyes brings this putative class action against Defendant Educational Credit Management Corporation ("ECMC") alleging violations of California's Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 et seq. (Compl. ¶¶ 82–92, ECF No. 1.) Plaintiff now moves for certification of a proposed class pursuant to Federal Rule of Civil Procedure 23. (ECF No. 76.) ECMC filed an opposition—arguing generally that Plaintiff fails to satisfy the requirements of Rule 23—to which Plaintiff replied. (ECF Nos. 80, 90.) Both parties also submitted supplemental briefing. (ECF Nos. 99, 102.)

The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the reasons that follow, the Court **GRANTS** Plaintiff's Motion for Class Certification

1  under Rule 23(b)(2) and (b)(3), with the Court's amendment to the class definition as

2  discussed below.

## I.   BACKGROUND

4  ECMC is a guaranty agency in the Federal Family Education Loan Program

5  ("FFELP") under the Higher Education Act of 1965, 20 U.S.C. § 1071 et seq.

6  (Skerbinc Decl. ¶ 4, ECF No. 25-2.) As such, ECMC helps to administer the FFELP

7  as a guarantor of federal student loans on behalf of the United States Department of

8  Education. (*Id.*) In carrying out this role, the company is tasked with "engag[ing] in

9  reasonable and documented collection activities" on loans that have gone into default.

10 *See* 34 C.F.R. § 682.410(b)(6)(i). As detailed below, Plaintiff claims ECMC violated

11 CIPA in the course of dealing with Plaintiff and other putative class members by

12 phone regarding their student loan debts.

### A.   ECMC's Recording Practice and Phone System

14 ECMC has an internal policy of recording all inbound and outbound calls that

15 reach a live customer service representative using a phone system provided by Noble

16 Systems Corporation ("Noble Phone System"). (*See* Mott Dep. 36:13–24, ECF No.

17 76-4.) In addition to an audio recording of each call, the Noble Phone System creates

18 a record of the caller's telephone number, the ECMC phone line used, the date and

19 time of the call, the hold and call duration, and the name of the agent who handled the

20 call. (*See id.* 141:3–13; *see also* Noble Phone System Call Data for Plaintiff, Mot. Ex.

21 3, ECF No. 106-1.) ECMC's stated policy is to maintain all call recordings and call

22 logs from the Noble Phone System for two years. (Mott Dep. 122:5–14.)[1]

23 Both parties agree that, during the proposed class period of August 2, 2014, to

24 March 31, 2015 ("Class Period"), the Noble Phone System was programmed

---

[1] Nevertheless, after having been served with Plaintiff's Complaint in March 2015, ECMC deleted its Noble Phone System records covering March 2013 to August 1, 2014. (Mott Dep. 122:15–123:21.) Consequently, Plaintiff requests a shorter class period than that specified in the Complaint. (*Compare* Compl. ¶ 55, *with* Mot. 10:9–15.) Curiously, however, ECMC was able to produce a transcript of its call with Plaintiff on May 10, 2013. (*See* Opp'n Ex. E, ECF No. 80-6.)

incorrectly for thirteen of ECMC's phone lines. (*See* Mott Dep. 96:17–99:12, 101:15–25.) Plaintiff contends that the error affected whether inbound callers would hear the following pre-recorded message: "Thank you for calling ECMC. This call is being recorded. Please hold while we connect you to an available representative." (*See id.* 33:7–9.) Specifically, the error involved the use of a "0" in the phone system's "Info Field." (*See id.* 96:17–99:12.) The Info Field governs how ECMC's pre-recorded warning is routed and played by the Noble Phone System. (*See id.* 96:1–99:12, 101:15–25; *see also* Noble Phone System Manual – Message Routing List Columns, Mot. Ex. 6, ECF No. 106-4 (describing how the Info Field is coded to route messages).)

The incorrect setting rendered ECMC's pre-recorded warning "non-mandatory." (*See* Mott Dep. 96:17–99:12, 101:15–25.) When a message is set to non-mandatory, the Noble Phone System stops playing the message when a live agent becomes available to take the call. (*Id.*; Noble Phone System Manual – Message Routing Options, Mot. Ex. 5, ECF No. 106-3.) If a live agent is available at the outset of the call, then the caller may be connected directly to the agent, and the warning message will not play. (Noble Phone System Manual – Message Routing Options.) ECMC described this as a violation of the company's usual practice, which is to set the warning message to "mandatory" for all inbound callers. (*See* Mott Dep. 65:2–16, 101:15–25.) Mandatory messages play in full "even if an agent becomes available while the message is playing." (*Id.* 65:3–12; Noble Phone System Manual – Message Routing Options.) While ECMC's policy for outbound calls and call transfers is for its agents to notify customers that they are on a recorded line, the pre-recorded message is the only warning that ECMC requires on inbound calls. (Mott Dep. 30:2–14, 30:21–31:19.)

**B.      Plaintiff's Class Action**

Plaintiff contends that when he called ECMC at phone number (866) 945-6305 during the Class Period, the warning message did not play, and so he was not notified

that his conversation would be recorded. (Reyes Decl. ¶ 4, ECF No. 76-21.) Plaintiff posits that this was the result of ECMC's use of the non-mandatory setting for the line that he called. (*See* Mot. 6:19–21, ECF No. 76-1; *see also* Mott Dep. 143:20–144:6, 144:21–145:1, 145:22–146:12.) Plaintiff further maintains that ECMC's agents did not warn him at any time during the calls that they would be recorded and that he was unaware of the recording throughout. (Reyes Decl. ¶¶ 4–5, 7.) Accordingly, he claims that ECMC recorded him without his express or implied consent. (*Id.* ¶ 7.)

Consequently, Plaintiff alleges that ECMC violated California's Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 et seq. (Compl. ¶¶ 82–92.) California Penal Code § 632.7(a) makes it unlawful to "intentionally record[] . . . a communication" with a "cellular radio telephone" "without the consent of all parties." The statute creates a private right of action, providing for the greater of $5,000 or three times the actual damages, if any, for each violation in addition to injunctive relief. Cal. Penal Code § 637.2(a)–(b). Plaintiff further contends that ECMC surreptitiously recorded thousands of inbound calls placed from cellular phone numbers with California area codes to thirteen of ECMC's forty-eight phone lines during the Class Period. (Mot. 3:22–4:7; *see also* Hansen Decl. ¶ 21, ECF No. 76-22; Mott Dep. 116:14–117:5.)

Plaintiff filed this putative class action on behalf of a statewide class of cellular telephone users recorded by ECMC without their consent. Plaintiff now moves to certify the following class pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3):

> All individuals who, between August 2, 2014, to March 31, 2015, inclusive (the "Class Period"), participated in an inbound telephone conversation with a live representative of ECMC that was: (1) placed to an ECMC phone line with a "0" in the Info field for the audio file that contained the verbiage "this call is being recorded"; (2) made from a telephone number that includes a California area code . . . ; and (3) transmitted via cellular telephone.

(Mot. 1:9–15.)

## II.    LEGAL STANDARD FOR CLASS CERTIFICATION

Class actions are governed by Federal Rule of Civil Procedure 23. Under Rule 23, the party seeking class certification must meet the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy—and at least one of the requirements of Rule 23(b). *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011). Here, Plaintiff relies on Rule 23(b)(2) and (b)(3). Under Rule 23(b)(2), certification is appropriate if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). As for Rule 23(b)(3), this requirement is satisfied if the court finds that common issues predominate over individual ones, and that a class action is superior to other available methods for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). The party seeking class certification bears the burden of demonstrating that the Rule 23(a) and (b) requirements have been met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

District courts have broad discretion in deciding whether to certify a class. *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010) ("The decision to grant or deny class certification is within the trial court's discretion."); *Armstrong v. Davis*, 275 F.3d 849, 871 n.28 (9th Cir. 2001) ("Federal Rule of Civil Procedure 23 provides district courts with broad discretion to determine whether a class should be certified[.]"), *abrogated on other grounds*, *Johnson v. California*, 543 U.S. 499 (2005). In exercising this discretion, a trial court must conduct a "rigorous analysis" to ensure the Rule 23 requirements have been satisfied. *Dukes*, 564 U.S. at 351. Although this analysis should not resolve the merits of the plaintiff's underlying claim, the court must consider the merits if the merits overlap with the Rule 23 requirements. *Id.*; *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *Ellis*, 657 F.3d at 980. Finally, a district court reviewing a motion for class certification "is required to consider the nature and range of proof necessary to establish [the] allegations" of the complaint. *In*

*re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982) (citing *Blackie v. Barrack*, 524 F.2d 891, 901 n.7 (9th Cir. 1975)).

## III.    ANALYSIS

### A.    Class Definition

As a preliminary matter, the Court finds that Plaintiff's Motion for Class Certification impermissibly expands the class proposed in Plaintiff's Complaint. "The Court is bound to class definitions provided in the complaint and, absent an amended complaint, will not consider certification beyond it." *Costelo v. Chertoff*, 258 F.R.D. 600, 604–05 (C.D. Cal. 2009). "The primary exception to this principle is when a plaintiff proposes a new class definition that is *narrower* than the class definition originally proposed, and does not involve a new claim for relief." *Bee, Denning, Inc. v. Capital All. Grp.*, 310 F.R.D. 614, 621 (S.D. Cal. 2015) (emphasis in original); *see also Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 306 (S.D. Cal. 2015) (permitting the plaintiff to propose a new class definition in his motion for class certification when the new definition was "simply a narrower version of the class definition presented in the [amended complaint]"). In his Complaint, Plaintiff sought to represent a class of callers who "were recorded by [ECMC], their employees and agents, while engaging in such communication using a cellular telephone, *without consenting to such recording*." (Compl. ¶ 55 (emphasis added).) Here, however, Plaintiff's proposed amended class definition does not include this limitation. (*See* Mot. 1:9–15.) Therefore, the Court will consider only a class limited to persons who were recorded without their consent—in line with the class identified in the Complaint. Accordingly, the Court amends Plaintiff's proposed class definition as follows:

//

//

//

All individuals who, between August 2, 2014, to March 31, 2015, inclusive (the "Class Period"), participated in an inbound telephone conversation with a live representative of ECMC that was: (1) placed to an ECMC phone line that used the non-mandatory message setting for its admonition that the call is being recorded; (2) made from a telephone number that includes a California area code (i.e., 209, 213, 310, 323, 408, 415, 424, 442, 510, 530, 559, 562, 619, 626, 650, 657, 661, 707, 714, 760, 805, 818, 831, 858, 909, 916, 925, 949, or 951); (3) transmitted via cellular telephone; and (4) recorded without the caller's consent.

## B. Certification Under Rule 23(b)(3)

Plaintiff first requests the Court use Rule 23(b)(3) to certify the class claims for damages under CIPA. (Mot. 14:13–24:13.) ECMC opposes on the grounds that the proposed class fails to satisfy the predominance and superiority requirements of Rule 23(b)(3) and the Rule 23(a) prerequisites of commonality, numerosity, typicality and adequacy. (Opp'n 8:8–24:13.) The Court considers ECMC's arguments *in seriatim*.

### 1. Rule 23(b)(3)—Predominance

"The predominance inquiry focuses on 'the relationship between the common and individual issues' and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)). The focus of the inquiry is not the presence or absence of commonality as it is under Rule 23(a)(2). Instead, the predominance requirement ensures that "common questions present a significant aspect of the case" such that "there is clear justification"—in terms of efficiency and judicial economy—for resolving those questions in a single adjudication. *Hanlon*, 150 F.3d at 1022 (citation omitted); *see also Vinole*, 571 F.3d at 944 ("[A] central concern of the Rule 23(b)(3) predominance test is whether adjudication of common issues will help achieve judicial economy."); *Zinser*, 253 F.3d at 1189 ("Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy.").

This requirement is satisfied when a common nucleus of facts and law is the central feature of the litigation, and when the "[p]laintiffs have shown that there are plausible classwide methods of proof available to prove their claims." *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 487 (N.D. Cal. 2011) (citation omitted); *see also Hanlon*, 150 F.3d at 1022. "Common questions do not predominate if the resolution of an overarching common issue breaks down into an unmanageable variety of individual legal and factual issues leading to an inordinate number of evidentiary hearings." *Kristensen v. Credit Payment Serv.*, 12 F. Supp. 3d 1292, 1306 (D. Nev. 2014) (citation omitted). Nevertheless, "neither the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies [Rule 23]." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Conoco-Phillips Co.*, 593 F.3d 802, 809 (9th Cir. 2010) (first alteration omitted).

Plaintiff's theory is that ECMC violated CIPA while its phone lines used the non-mandatory setting because class members were connected to live ECMC agents without receiving its pre-recorded warning. (Mot. 2:18–20; Pl.'s Supp. Br. 1:2–2:2, 3:18–4:4, ECF No. 99.) The generalized proof offered by Plaintiff is: (1) ECMC's failure to obtain express written consent from its borrowers; (2) its reliance on its pre-recorded message to warn inbound callers; (3) its admitted use of the non-mandatory setting for twenty-seven (27) percent of its phone lines (in apparent violation of its unwritten policy[2]); (4) its explicit policy of recording all calls with live agents; and (5) ECMC's own records pertaining to its inbound and outbound calls.

The Court finds that Plaintiff has demonstrated that common questions of law and fact—including whether ECMC's recording practice violated CIPA, whether

---

[2] (*See* Mott Dep. 93:20–22, 94:23.)

ECMC's pre-recorded message was transmitted to potential class members, whether the message and/or other disclosures were sufficient to establish awareness of recording for all subsequent calls, and whether a caller's hold time can serve as a proxy for notice and consent—predominate in this case. These questions can be answered with generalized evidence applicable on a classwide basis.

Both Plaintiff's legal theory and supporting evidence are applicable to the entire class, and the Court finds that individualized inquiries will not overwhelm the common issues. Particularly, Plaintiff seeks to vindicate the class claims by analyzing ECMC's call records generated by its Noble Phone System, which creates an independent record of each caller's telephone number, the ECMC phone line used, the date and time of the call, the hold and call duration, and the name of the agent who handled the call. (*See* Mott Dep. 141:3–13; *see also* Noble Phone System Call Data for Plaintiff.) Because these records can be evaluated on a classwide basis in light of evidence pertaining to ECMC's practices and policies, the Court finds that there is a common nucleus of fact and law that is the central feature of this litigation. The Court also notes that ECMC does not claim to have received prior express consent from any inbound callers to the phone lines that used non-mandatory messages. Moreover, ECMC has not submitted other persuasive evidence of express consent or "actual knowledge of recording during the Class Period followed by additional calls." *See NEI Contracting & Eng'g, Inc. v. Hanson Aggregates, Inc.* ("*NEI Contracting II*"), No. 12-cv-01685-BAS(JLB), 2015 WL 4923510, at *6 (S.D. Cal. Aug. 18, 2015). The Court will therefore not presume that the need to resolve issues related to consent will defeat the predominance requirement. *See id.* Accordingly, under these circumstances, the Court finds there is a minimal likelihood that establishing liability will require a series of individualized inquiries. *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010) (holding that a putative class action satisfied predominance because the allegations were susceptible to proof by generalized evidence).

ECMC is skeptical of the sufficiency of the generalized evidence offered to prove class members' claims and argues that the common issues identified by Plaintiff will necessarily break down into individualized inquiries into whether class members consented to ECMC's recording practices. (*See* Opp'n 11:12–14.) To support this position, ECMC proposes two "defenses" that it claims will cause individualized inquiries to overwhelm the common issues. These claimed defenses are that (1) ECMC's warning on a previous call can establish a customer's awareness of and implied consent to future recordings of subsequent calls, and (2) a caller's hold time for each individual call can serve as a proxy for notice and consent. (*See id.* 11:16–12:2, 12:13–27.)

### i.    ECMC's Prior Awareness Defense

The Court will first consider the effect of ECMC's proposed "prior awareness" defense. As ECMC correctly notes, the existence of prior awareness of its recording practice or consent thereto could raise the possibility of individual differences among class members. *See, e.g.*, *Kight v. CashCall, Inc.* ("*CashCall II*"), 231 Cal. App. 4th 112, 132 (holding that because "the defendant has the right to litigate the issue of each class member's consent," the trial court did not improperly exercise its discretion in finding that these issues would predominate over common questions). Here, however, ECMC offers evidence only that *some* callers—not putative class members—were notified that their inbound calls would be recorded. (*See* Opp'n Exs. F, G.) Specifically, ECMC points to two selected recordings of its agents warning inbound callers that their calls are recorded as evidence that its callers are routinely advised of ECMC's recording practice. (*See id.*) ECMC does not show or even explicitly contend that these callers are members of the putative class. (*See id.* 16:9–13; *see also* Wood Decl. ¶ 20, ECF No. 76.) In one call, the warning took place only after the caller had already shared personally identifiable information. (*See* Opp'n Ex. G.) Furthermore, the caller was not from California and so could not be a member of the putative class.

(*See* Wood Decl. ¶ 20.) Likewise, it is unclear whether the second recording is of a caller from Plaintiff's proposed class.

ECMC also provides evidence that Plaintiff was notified during a call with one of its agents in May 2013 that "the calls are being recorded." (Opp'n Ex. E at 2.) Nevertheless, it is unclear whether this warning almost two years prior to the calls at issue was sufficient to establish awareness of and consent to the recording of *all* future calls. *Cf. Kight v. CashCall, Inc.* ("*CashCall I*"), 200 Cal. App. 4th 1377, 1399 (2011) ("First, even assuming [defendant]'s argument is correct that each plaintiff heard the warning message '*at the outset*' of his or her '*borrower/lender relationship*' . . . this fact does not establish as a matter of law plaintiffs were adequately warned that subsequent calls would be monitored." (emphasis in original)); *see also United States v. Staves*, 383 F.3d 977, 981 (9th Cir. 2004) (noting that "foreseeability of monitoring is insufficient to infer consent" to wiretapping). And, "[w]ithout evidence of actual consent *during the Class Period*, the evidence before the Court on the issue of consent during the Class Period is merely speculative." *NEI Contracting II*, 2015 WL 4923510, at *4 (emphasis added); *cf. Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 567 (W.D. Wash. 2012) (noting in a Telephone Consumer Protection Act case that "speculation that [proposed class members] may have given their express consent to receive text message advertising is not sufficient to defeat class certification").

In light of the foregoing, the present case is comparable to *NEI Contracting & Engineering, Inc. v. Hanson Aggregates, Inc.*, where this Court granted class certification after the defendant failed to establish class members' knowledge of or consent to recording during the class period. *See NEI Contracting II*, 2015 WL 4923510, at *6. Following class certification, the defendant showed that nine putative class members were aware of the recording practice and consented to it by continuing to purchase from the defendant, and so the Court ultimately decertified the class. *See NEI Contracting & Eng'g, Inc. v. Hanson Aggregates, Inc.* ("*NEI Contracting III*"), No. 12-cv-01685-BAS(JLB), 2016 WL 2610107, at *3 (S.D. Cal. May 6, 2016).

Based on the defendant's exemplars of class members' consent, the Court found persuasive the concern that "customer[s]' potential long-standing relationship[s] with [defendant] may influence the issue of consent because" of the defendant's seven year-long history of proper and consistent notice. *See id.* at \*7.

Here, in contrast, ECMC offers no such persuasive exemplars of consent during the Class Period, and the company did not consistently "provid[e] sufficient notice of its recording practice" to its customers before the Class Period. (*See* Mott Dep. 97:7–14 (acknowledging that ECMC's (866) 945-6305 phone line was likely set to non-mandatory "since the number was created").) The Court recognizes that some individualized inquiries may be necessary to resolve questions of consent in some instances, but the common questions amongst the class members still "present a significant aspect of the case" such that "there is clear justification"—in terms of efficiency and judicial economy—for resolving those questions in a single adjudication. *See Hanlon*, 150 F.3d at 1022. Further, the Court addresses below in its discussion of the superiority requirement the manageability concerns posed by this defense—as well as ECMC's "hold time" defense.

Thus, the Court is unconvinced by ECMC's claim that the potential need for individualized inquiries based on its "prior awareness" defense defeats the predominance requirement.

### ii.     ECMC's "Hold Time" Defense

The Court turns to ECMC's argument that under its "hold time" defense, there will be a need for unmanageable individualized inquiries that will cause common issues to not predominate. Based on (i) its Noble Phone System's records showing the average hold time for inbound calls to (866) 945-6305—the number Plaintiff called—and (ii) data about Plaintiff's calls, ECMC argues that Plaintiff must have heard the non-mandatory message and thus consented to the recording. (*See* ECF No. 88, Ex. C; Opp'n Ex. D; ECMC's Supp. Br. 1:15–17, ECF No. 102). Using Plaintiff's circumstances as an example, the company then argues that its hold time defense will

defeat predominance because the defense will necessitate the same inquiry for every other potential class member. (*See* ECMC's Supp. Br. 6:13–8:11.)

Specifically, ECMC's records show that Plaintiff was on hold for forty-four seconds before one of the calls at issue and for fourteen seconds before the other. (Opp'n Ex. D.) These hold times are above and below the average hold time of nineteen seconds advanced by ECMC. (ECMC's Supp. Br. 9:3–5; *see also* ECF No. 88, Ex. C.) ECMC contends that because its recorded warning is "complete after just 4 seconds" of hold time, Plaintiff must have received the message, even though the non-mandatory setting was selected on the Noble Phone System. (*See* Opp'n 1:22–24; 12:13–27.) Accordingly, ECMC protests that individualized inquiries about Plaintiff's and other class members' knowledge of recording based on their hold time will predominate. (*See id.* 12:13–13:7.) In response, Plaintiff presents evidence suggesting that ECMC's estimate that its pre-recorded warning message plays in "just 4 seconds" may be inaccurate. (*See, e.g.*, Opp'n Ex. A at 4:9–10 (noting that several seconds may elapse before a message is played); Mot. Exs. 5, 6, ECF Nos. 106-3, 106-4 (showing that multiple messages can be played in sequence or "chained," thus changing the amount of hold time required for a message to play).) Plaintiff also points to ECMC's records showing that inbound callers were routinely connected to live agents in fewer than four seconds, (*see* Hansen Decl. II ¶ 9, ECF No. 99-2), which ECMC's counsel previously represented to the Court was "highly unlikely" despite apparently having evidence to the contrary, (*see* Opp'n 10:1–5; *see also* Wood Decl. II ¶ 3, ECF No. 99-1 (noting that ECMC's counsel called the phone line "the day after ECMC was served with the instant lawsuit, experiencing a hold time of 0:00:00")).

ECMC's assertions and questionable representations to the contrary notwithstanding, its "hold time" defense is plausibly susceptible to classwide proof. Most importantly, the issue of whether hold time can be used as an accurate indicator of class members' actual knowledge and consent speaks to ECMC's practices, business records, and overall credibility and does not require an individualized inquiry

into each class member's subjective knowledge. If ECMC's argument on this threshold matter prevails, class members who did not remain on hold long enough to receive the warning could be identified using ECMC's objective call log data, which applies to all class members. (*See* Hansen Decl. II ¶¶ 8–9.) Specifically, ECMC's own call logs provide an objective record of the hold time associated with each call. (*See generally* Hansen Decl. II.; Opp'n Ex. D.) While the inquiry is "individualized" in that it addresses the circumstances and results of each call, it involves the use of generalized data to produce a single classwide analysis. (*See* Hansen Decl. II ¶¶ 8–9.) Consequently, ECMC's concern that its hold time defense will result in an unmanageable myriad of "mini-trials" on the issue of class members' consent is not persuasive.

In sum, because this case presents common issues that will be the central feature of the litigation, the Court finds Plaintiff has demonstrated the predominance requirement under Rule 23(b)(3) is satisfied.

### 2.    Rule 23(b)(3)—Superiority

Rule 23(b)(3) also requires Plaintiff to demonstrate "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation," and it is superior "if no realistic alternative exists." *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996). "This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023. Considerations relevant to this inquiry include "the class members' interest in individually controlling the prosecution or defense of separate actions" and "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A), (D).

Plaintiff argues that a class action is a superior method for adjudicating the claims presented here because most class members would find it prohibitively costly

to litigate their claims individually. (*See* Mot. 21:12–22:20.) Plaintiff contends that CIPA's damages provision—allowing claimants to recover $5,000 for each willful violation—is generally insufficient to incentivize individual litigation. (*Id*.) Plaintiff also notes that "the secretive nature of the violations" further diminishes class members' abilities to vindicate their rights through individual claims. (*See* Pl.'s Supp. Br. 7:20–21.)

This Court agrees with Plaintiff that the potential damages are unlikely to adequately incentivize potential plaintiffs to assume the cost of litigating contentious CIPA claims such as those presented in this case on an individual basis. *Cf.* Alex A. Parkinson, *Class Actions as Firms*, 2016 Colum. Bus. L. Rev. 740, 744 (describing class actions as "collective enterprises that . . . aggregate resources to avoid the higher costs of transacting on the market . . . [and] to realize efficiency gains"). This disparity between litigation costs and prospective recovery provides "[t]he most compelling rationale for finding superiority in a class action." *Smith v. Microsoft Corp.*, 297 F.R.D. 464, 468 (S.D. Cal. 2014) (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996)); *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."); *Wolin*, 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification.").

Although ECMC contends that the class members here have sufficient incentive to pursue a solo action, the Court is not persuaded. Although an individual does have the option of bringing an individual CIPA claim, that alternative does not provide an equally effective or efficient method of handling the instant case. Here, ECMC allegedly concealed its use of the non-mandatory setting on the Noble Phone System throughout discovery and deleted some of the records relevant to one of its primary defenses. (*See* ECF No. 98 at 4 & n.2–3; Mot. n.6.) This fact scenario—one that

requires something beyond a basic reading of CIPA and its settled case law—is thus ill-suited for small claims litigation. Under these circumstances, $5,000 for each violation is unlikely to incentivize the average claimant to incur the opportunity costs of time, effort, and attention to pursue her claim on an individual basis. *See Ades v. Omni Hotels Mgmt. Corp.*, No. 13–cv–02468–CAS(MANx), 2014 WL 4627271, at *14 (C.D. Cal. Sept. 8, 2014) (reasoning "$5,000 in damages is [not] so clearly sufficient to motivate individual litigation involving complex factual and legal issues as to weigh against class certification"); *see also NEI Contracting II*, 2015 WL 4923510, at *9 (finding that CIPA's statutory damages are not "particularly large" so as to incentivize individual control of the litigation).

ECMC also challenges superiority on the grounds that managing the class action will be "[un]workable" because individualized issues, particularly whether each class member consented to ECMC's recording, necessarily require multiple "mini-trials." (Opp'n 24:3–13.) This Court disagrees. As the Court explains in its discussion of the predominance requirement, common issues dominate this litigation. ECMC has identified no individual issues of liability or damages that "outweigh the benefits of considering common issues in one trial." *See Zinser*, 253 F.3d at 1192.

While ECMC correctly asserts its "right to litigate the issue of each class member's consent," (Opp'n 13:5), it has not presented sufficient evidence that to do so would require individualized inquiries that are unmanageable. Indeed, to the extent ECMC's "hold time" defense proves persuasive, potential class members who received its warning could be excluded based on ECMC's objective call log data, which applies to all class members. (*See* Hansen Decl. II ¶¶ 8–9.) Plaintiff's expert describes in detail the methodology he could use to exclude class members who received ECMC's pre-recorded warning message while on hold. (*See id.* ¶¶ 4–9.) Comparing ECMC's proposed minimum hold time to the hold time column in ECMC's call logs, Plaintiff's expert was able to identify which individual callers were not placed on hold long enough to have heard the warning before they were connected

to a live agent. (*See id.*) Because ECMC's own call logs provide an objective record of the hold time associated with each call, (*see id.* ¶ 3; Plaintiff's Call History, Opp'n Ex. D, ECF No. 80-5), it would be relatively straightforward to identify the inbound calls in the spreadsheets that were transferred to live agents only after sufficient time on hold for the warning to play in its entirety, (*see* Hansen Decl. II ¶¶ 8–9).

Similarly, to the extent that ECMC's "prior awareness" defense prevails, potential class members who were aware of ECMC's recording practices based on prior calls can be identified and removed using data analysis. For example, the list of potential class members' phone numbers and the dates of their recorded calls on ECMC's inbound lines that used the non-mandatory message setting could be cross-referenced with ECMC's call records for its other thirty-five phone lines (i.e., its outbound lines and its inbound lines that used the mandatory message setting). This objective analysis would allow Plaintiff to identify those potential class members who were recorded *after* (1) having received a call from an outbound line or (2) having placed an inbound call to one of ECMC's lines that used the mandatory message setting. Because the identified callers would have potentially been warned about ECMC's recording practices prior to the relevant recorded calls, (*see* Mott Dep. 30:2–14), they could then be excluded from the class—if pursuing this course is appropriate to begin with.

"If [ECMC] develop[s] proof of consent that requires burdensome, individualized inquiries," the Court can either handle such issues in the context of classwide proceedings or, if necessary, revisit certification. *See Kristensen*, 12 F. Supp. 3d at 1307–08 (finding superiority requirement met in a putative class action where the court could review individual affidavits averring lack of consent rather than holding thousands of separate trials); *see also Ades*, 2014 WL 4627271, at *12 (noting that class certification can be revisited if individualized issues of consent prove unmanageable). Accordingly, the Court finds that Plaintiff has met the superiority requirement.

### 3. Rule 23(a)(1)—Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although there is no absolute threshold, courts generally find numerosity satisfied when the class includes at least forty members. *Gomez v. Rossi Concrete, Inc.*, 270 F.R.D. 579, 588 (S.D. Cal. 2010); *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007) ("[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer."). Numerical threshold aside, the central question underlying the numerosity requirement "is whether Plaintiff[ ] ha[s] sufficiently identified and demonstrated the existence of the numbers of persons for whom they speak." *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 680–81 (S.D. Cal. 1999). "Plaintiff[ ] must show some evidence of or reasonably estimate the number of class members." *Id.* at 681.

Here, ECMC argues that Plaintiff has not satisfied numerosity because it is "highly unlikely that there are numerous callers who did not receive at least the first 4 seconds of the 8-second opening message." (Opp'n 9:24–10:7.) Even assuming, *arguendo*, that ECMC's "hold time" defense prevails, this argument against numerosity runs contrary to the evidence before this Court. Plaintiff has presented evidence showing that ECMC received inbound calls to its (866) 945-6305 phone line from approximately 1,829 unique telephone numbers with California area codes. (Mot. 14:26–15:4; Hansen Decl. I ¶ 21, ECF No. 76-22.)[3] Plaintiff further asserts that the class could be up to thirteen times higher once ECMC produces records for its other twelve phone lines that used the non-mandatory setting during the Class Period.

---

[3] ECMC questions the reliability of this figure, positing that Plaintiff's expert included individuals who were not in fact recorded. (Opp'n 9:24–10:7.) However, ECMC also stated in a verified discovery response that it provided Plaintiff with "a list of *recorded* telephone calls placed to the ECMC number 866-945-6305." (*Id.* Ex. A at 5:4–7 (emphasis added).) This is the same list that was used by Plaintiff's expert. (*See* Hansen Decl. I ¶ 16.) The Court holds ECMC to its statement under penalty of perjury and rejects its objections to Plaintiff's expert's testimony.

The Court acknowledges that this potential group of callers may include persons who consented to ECMC's recording, and who thus would not be part of the ultimate class under review by the Court. Nevertheless, Plaintiff shows that numerous callers even meet the condition for non-consent set forth by ECMC in its "hold time" defense—that is, callers who objectively "did not receive at least the first 4 seconds of the 8-second opening message." (*See* Hansen Decl. II ¶¶ 8–9.) An analysis of ECMC's call logs for just one of the thirteen phone lines at issue supports the conclusion that there are at least 800 callers whose recorded hold times show they "did not receive at least the first 4 seconds of the 8-second opening message." (*See id.* ¶ 9.) Accordingly, even when the Court accepts ECMC's hold time position, the number of potential class members could reach up to approximately 10,000 callers once the remaining twelve ECMC phone lines are analyzed using this same methodology. (*See generally id.* (describing the methodology for evaluating ECMC's objective hold time data).) Even if this extrapolation overstates the case, a conservative estimate of unique telephone numbers with California area codes that did not receive ECMC's warning message still yields more than 800 potential class members. (*Id.* ¶ 9.) This reasonable estimate is rooted in objective evidence provided by ECMC itself and is more than sufficient to satisfy numerosity. Hence, the Court finds this requirement is met.

### 4. Rule 23(a)(2)—Commonality

To satisfy Rule 23(a)(2), a party seeking class certification must demonstrate that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement will be met only if the plaintiff shows that "the class members have suffered the same injury." *Dukes*, 564 U.S. at 350 (internal quotation marks and citation omitted). This does not mean that the claims of every member of the putative class must stem from identical factual circumstances. *Hanlon*, 150 F.3d at 1019 ("The existence of shared legal issues with divergent factual predicates is sufficient [for commonality], as is a common core of salient facts coupled with

disparate legal remedies within the class."). Instead, the core concern of the inquiry is that the common contention at the heart of the claims be capable of classwide resolution—"which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041–42 (9th Cir. 2012) (quoting *Dukes*, 564 U.S. at 350). "What matters to class certification" is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350.

"The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3)," that is, the "predominance" inquiry that requires that "common questions 'present a significant aspect of the case.'" *Hanlon*, 150 F.3d at 1019, 1022 (citation omitted). As the Court explains in its discussion of the predominance requirement, common issues dominate this litigation. *See* discussion *supra* Section III.B.1. It follows that the commonality requirement is also satisfied.

According to Plaintiff, the core issue underlying the proposed class is whether ECMC's recording practices violated CIPA. Plaintiff asserts that common questions of law and fact include: (1) whether ECMC's pre-recorded message was transmitted to class members; (2) whether the message and/or other disclosures were sufficient to establish consent to ECMC's recording of all subsequent calls; and (3) whether a caller's hold time can serve as a proxy for notice and consent. (*See* Pl.'s Supp. Br. 8:8–17, 9:1–11.) ECMC argues that Plaintiff does not satisfy the commonality requirement "because the issue of consent will depend on individualized proof as to each putative class member," which necessarily prevents resolution of "[t]he validity of the CIPA class claims . . . 'in one stroke.'" (Opp'n 11:12–14.)

ECMC's argument, again, runs contrary to the evidence before the Court. Plaintiff's claims are sufficient to establish commonality. Plaintiff has presented testimony and exhibits demonstrating that at least hundreds of putative class members

did not receive ECMC's pre-recorded warning message on inbound calls during the Class Period due to ECMC's use of the non-mandatory message setting. (Hansen Decl. II ¶¶ 8–9.) Plaintiff has cited ECMC's own call log records suggesting that Plaintiff and hundreds of other persons were recorded without their knowledge or consent on ECMC's phone lines that used the non-mandatory message setting. (*See generally* Hansen Decl. I; Hansen Decl. II.) Plaintiff's allegations relate to a common course of conduct by ECMC and are supported by objective data recorded by ECMC's Noble Phone System. The Court has determined that this objective data can be evaluated to resolve issues common to the class. *See* discussion *supra* Section III.B.2. Hence, these claims provide the thread of common facts that the commonality requirement demands. *See, e.g.*, *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290-BEN(NLS), 2013 WL 444619, at *2 (S.D. Cal. Feb. 5, 2013) (finding commonality satisfied where "the proposed class members' claims stem from the same factual circumstances").

Furthermore, whether ECMC's notification practices resulted in recordings that violated CIPA involves commons question of law that will drive resolution of the classwide claims. Particularly, while some individual factual questions of consent may arise, the validity of ECMC's two main defenses—the "hold time" and "prior awareness" defenses—implicates legal and factual questions whose answers may be applied commonly to the class. Accordingly, the Court finds that classwide proceedings will "generate common answers" likely to "drive the resolution of the litigation." *See Dukes*, 564 U.S. at 350. As such, Plaintiff has satisfied the commonality requirement.

### 5.    Rule 23(a)(3)—Typicality

Rule 23(a)(3) requires that "the claims and defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The standard is a "permissive" one and requires only that the claims of the class representatives be "reasonably co-extensive with those of absent class members; they

– 21 –

15cv0628

need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriquez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2009) (citation omitted); *see also Hanon v. Dataprod. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508.

Plaintiff argues that his claims are typical of those of the unnamed class members because "they derive from [ECMC]'s recording of incoming calls from cellphones without consent." (Mot. 17:2.) This Court agrees with Plaintiff. Plaintiff's claims are typical of the class because he alleges that ECMC's use of the non-mandatory message setting resulted in the unlawful recording of himself and other class members who did not receive ECMC's pre-recorded warning message. Under these circumstances, the typicality requirement is satisfied. *See, e.g., Ades*, 2014 WL 4627271, at *9 (finding typicality where plaintiffs' claims were "'reasonably co-extensive' with those of other putative class members" because "[t]hey allege a course of conduct by [defendant] common to the class, and privacy invasions typical to those of the class generally"); *McDonald v. Bass Pro Outdoor World, LLC*, No. 13-cv-889-BAS(DHB), 2014 WL 3867522, at *4 (S.D. Cal. Aug. 5, 2014) (finding typicality where the named plaintiff claimed that "his telephone conversation with [d]efendants' customer service representatives [was] recorded without his consent," resulting in the same harm alleged by other putative class members).

ECMC maintains that Plaintiff's claim is not typical of other members of the class because "every putative class member's situation is unique and arises from a different course of events." (Opp'n 14:22–24.) ECMC further contends that Plaintiff's

claim involves "unique facts that are irrelevant to the claims of any other putative class members," including "[w]hat Plaintiff may or may not have heard; how long he was on hold; [and] whether he had prior knowledge that [ECMC] records telephone calls." (*Id.* 15:11–14.) This argument relies on ECMC's claim that individualized inquiries are required to determine whether each putative class member consented to be recorded.

As the Court explains above, however, it is simply not the case that the question of consent is necessarily incapable of resolution on a classwide basis. To the contrary, Plaintiff has plausibly demonstrated that the issue of consent can be addressed using objective criteria. (*See* Hansen Decl. I ¶¶ 10–23; Hansen Decl. II. ¶¶ 3–9.) Likewise, the "unique facts" cited by ECMC implicate the objective criteria relevant to the class as a whole—that is, recorded data pertaining to the amount of time a caller was placed on hold, the total length of the call, and the context of the call in relation to the caller's interactions with ECMC's other thirty-five phone lines. Consequently, these facts, which ECMC would analyze with respect to any individual plaintiff, do not raise "a danger that absent class members will suffer [because] their representative is preoccupied with defenses unique to it." *See Hanon*, 976 F.2d at 508 (citation omitted). Thus, Plaintiff's claims are typical of the claims of the putative class.

### 6.    Rule 23(a)(4)—Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis*, 657 F.3d at 985 (quoting *Hanlon*, 150 F.3d at 1020). This requirement ensures due process for absent class members who, upon entry of judgment in a class proceeding, must forfeit their right to bring an individual claim. *See Hanlon*, 150 F.3d at 1020 ("To satisfy constitutional

due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them.").

Here, Plaintiff has met his burden to demonstrate adequacy of representation. First, Plaintiff's interests—to receive compensation for alleged violations of CIPA and to deter and prevent ECMC from engaging in the alleged conduct again—are clear and are aligned with the interests of the putative class as a whole. Second, there is nothing to suggest that the named Plaintiff or his counsel have any conflicts of interest with other class members such that class certification raises due process concerns. Third, there is no indication that the named Plaintiff and his counsel lack the incentive to continue to prosecute this action vigorously. Finally, ECMC does not dispute the competency of Plaintiff's counsel, and this Court finds that Plaintiff's counsel have ample experience and expertise to adequately represent the class. Plaintiff's counsel have provided evidence of their experience litigating consumer class actions in general, and privacy class actions in particular, to demonstrate their competency. (*See generally* Mot.; Marron Decl., ECF No. 76.) *See also, e.g.*, *Knutson v. Schwan's Home Serv., Inc.*, No. 12-cv-0964-GPC-DHB, 2013 WL 4774763, at *8 (S.D. Cal. Sept. 5, 2013) (finding adequacy satisfied based partly upon the "[p]laintiffs' unchallenged representation that their counsel is competent in prosecuting class actions"). All these factors support a finding of adequacy.

ECMC's primary challenge on adequacy grounds is that Plaintiff cannot adequately represent the interest of the proposed class because he is subject to unique defenses. (Opp'n 17:16–25.) This Court is unconvinced. As the Court's recitation of Plaintiff's contentions in other sections of this order demonstrates, Plaintiff has argued persuasively that the defenses cited by ECMC are not unique to Plaintiff and are in fact potentially relevant to the class as a whole. ECMC's assertion to the contrary does not undercut the showing of adequacy made here. *See, e.g.*, *Del Valle v. Glob. Exch. Vacation Club*, 320 F.R.D. 50, 59 (C.D. Cal. Feb. 1, 2017) (finding adequacy where

a "defense [was] potentially relevant to all class members" and thus "not a material distinction between Plaintiff and other members of the putative class").

ECMC also offers a feeble attack on Plaintiff's integrity that itself "play[s] fast and loose with the facts." (*See* Opp'n 18:27–19:19; *compare id.* 19:7–19, *with* Reyes Decl. ¶¶ 4–7.) While potentially relevant, "questions of personal integrity are but one factor the Court must consider in making the adequacy determination" and are seldom dispositive. *See In re Comput. Memories Sec. Litig.*, 111 F.R.D. 675, 682 (N.D. Cal. 1986); s*ee also Del Valle*, 320 F.R.D. at 59 (finding adequacy even where defendant's "evidence raise[d] serious questions about the veracity of [p]laintiff's account"). Indeed, to render a class representative inadequate, attacks on his credibility must be "so sharp as to jeopardize the interests of absent class members," and must pertain to "issues directly relevant to the litigation or . . . confirmed examples of dishonesty, such as a criminal conviction for fraud." *Del Valle*, 320 F.R.D. at 59 (citation omitted). ECMC's allegation of dishonest behavior by Plaintiff fails to demonstrate a danger to absent class members. Accordingly, the Court finds that Plaintiff has satisfied the adequacy requirement.

In sum, Plaintiff has demonstrated all of the requirements of Rule 23(a) and (b)(3) are satisfied. The Court will therefore certify the class's damages claims under Rule 23(b)(3).[4]

## C. Certification Under Rule 23(b)(2)

Plaintiff also seeks certification under Federal Rule of Civil Procedure 23(b)(2). (Mot. 24:14–25:15.) Unlike Rule 23(b)(3), which is appropriate for "individualized monetary claims," "[t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that

---

[4] In Plaintiff's Supplemental Brief, he seeks leave to add or substitute a new named Plaintiff. (Pl. Supp. Br. 5:1–8:3.) If Plaintiff still desires to pursue this request in light of this order on his motion to certify, he should make the request in a noticed motion—pending Magistrate Judge Schopler's consideration of Plaintiff's *ex parte* application to modify the scheduling order to allow him to do so (ECF No. 68). The Court will then consider Plaintiff's request.

it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360–62 (internal quotation marks omitted). Further, when a class proceeds under this rule and seeks "an indivisible injunction benefitting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating the dispute." *Id.* at 362–63. And, given that the relief sought "in a (b)(2) class is prophylactic, enures to the benefit of each class member, and is based on accused conduct that applies uniformly to the class, notice to absent class members and an opportunity to opt out of the class is not required." *Aho v. AmeriCredit Fin. Servs., Inc.*, 277 F.R.D. 609, 615 (S.D. Cal. 2011).

Plaintiff seeks to certify a class to pursue injunctive relief in the form of an "order requiring ECMC to provide a warning at the onset of all incoming calls that the call will be recorded." (Mot. 25:8–9; *see also* Compl. ¶ 100.) He argues injunctive relief "will cure the deficiency in [ECMC]'s current policy and protect consumers." (Mot. 25:9–10.) Regardless of the blameworthiness of ECMC's conduct, it appears the company did not have a procedure in place to ensure that every caller was warned that the conversation would be recorded. Because ECMC's practice of recording calls without ensuring all parties were warned beforehand applies to the entire class identified above, "any injunctive relief prohibiting this practice would also apply to the entire class." *See Raffin v. Medicredit, Inc.*, No. CV 15-4912-GHK (PJWx), 2017 WL 131745, at *9 (C.D. Cal. Jan. 3, 2017) (finding certification of a Rule 23(b)(2) class under CIPA appropriate where the defendant's "policy of recording a conversation without first informing all parties that the conversation is being recorded applie[d] to the entire class"). Consequently, the Court concludes certifying a class under Rule 23(b)(2) to pursue this injunctive relief is appropriate. *See Dukes*, 564 U.S. at 362–63.

ECMC resists certification under Rule 23(b)(2) because it believes Plaintiff's request for injunctive relief is moot. The company claims it corrected the error that

led to not all inbound callers receiving an admonition that the call would be recorded. (Opp'n 24:20–21.) ECMC also highlights that it adopted a written procedure to attempt to avoid this type of conduct in the future. (*Id.* 24:21–23.)

The company's mootness argument bears more on the merits of the request for injunctive relief than whether certification under Rule 23(b)(2) is appropriate. That being said, the Court recognizes that certifying a class under Rule 23(b)(2) would be pointless if the request for injunctive relief is truly moot. The Court, however, is nonetheless unconvinced that ECMC has shown the injunctive relief to be sought by the proposed class is moot.

"A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 174 (2000). For mootness to apply based on the voluntary cessation of the complained of unlawful behavior, the party must prove that subsequent events make it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 189. "Such a burden will typically be met only by changes that are permanent in nature and that foreclose a reasonable chance of recurrence of the challenged conduct." *Tandy v. City of Wichita*, 380 F.3d 1277, 1291 (10th Cir. 2004); *see also Rosebrock v. Mathis*, 745 F. 3d 963, 972 (9th Cir. 2014) (noting in the governmental policy context that mootness is more likely if evidenced by language that is unequivocal in tone, the case in question was the catalyst for the change in policy, and the policy has been in place for a long time); *Bell v. City of Boise*, 709 F.3d 890, 901 (9th Cir. 2013) (deeming that courts will be less inclined to find mootness where a new policy "could be easily abandoned or altered in the future" because that type of policy is not "the kind of permanent change that proves voluntary cessation"); *White v. Lee*, 227 F.3d 1214, 1242–44 (9th Cir. 2000).

ECMC has not carried its heavy burden here. The company's correction of an error in the settings for its Noble Phone System and its adoption of an internal written policy do not make it "absolutely clear that the allegedly wrongful behavior could not

reasonably be expected to recur." *See Friends of the Earth*, 528 U.S. at 189. The correction of the error alone is unconvincing—it is not implausible that the settings on the Noble Phone System that led to this lawsuit could be again incorrectly programmed in future. (Mott Dep. 22:17–25:12 (explaining that simply setting a number to "0" instead of "1" in the Noble Phone System's settings led to the problem at the heart of this case that allegedly caused ECMC to violate CIPA numerous times).) For example, a software or hardware update could require the Noble Phone System's settings to be reconfigured, and the same mistake could be made, as it was made previously for thirteen separate phone lines.

The same is true for ECMC's new written policy. ECMC's person most knowledgeable testified that ECMC "always had a policy to do what is stated" in the new written procedure. (Mott Dep. 19:20–22.) The company "just didn't have a formal procedure" and relied on the policy being verbally communicated. (*Id.* 93:20–22, 95:1.) In other words, a verbal policy that was not adhered to by ECMC before this lawsuit has now been placed into written form. Committing this policy to writing may be an improvement, but this change does not demonstrate it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *See Friends of the Earth*, 528 U.S. at 189. The company similarly does not show this policy could not "be easily abandoned or altered in the future." *See Bell*, 709 F.3d at 901; *see also Raffin*, 2017 WL 131745, at *10 (rejecting the defendant's mootness argument based on voluntary cessation of conduct where the company could "easily, and unilaterally, change its" procedures to repeat its alleged practice of unlawful recording). "Simply put," ECMC has not established at this juncture that putting its procedure into writing "is the kind of permanent change that proves voluntary cessation." *See Bell*, 709 F.3d at 901. Thus, the Court rejects ECMC's argument that certification under Rule 23(b)(2) is inappropriate on mootness grounds.

Accordingly, because the requirements of Rule 23(a) and (b)(2) are satisfied, the Court will certify the injunctive relief portion of Plaintiff's action under Rule 23(b)(2).

## IV. CONCLUSION & ORDERS

As previously noted by this Court, one of the strongest justifications for the class action device is its regulatory function. *See Bee, Denning, Inc.*, 310 F.R.D. at 630. Violations of CIPA, which aims to "protect[] California residents from secret recording," are likely to go unrecognized due to the secretive nature of invasions of privacy. *See Ades*, 46 F. Supp. 3d at 1009. Consequently, the statute is unlikely to achieve optimal deterrence without the prospect of a class action suit designed to vindicate many individual claims at once.

Plaintiff here has met the requirements of Rule 23(a), (b)(2), and (b)(3). Accordingly, the Court **GRANTS** Plaintiff's Motion for Class Certification as set forth below and **ORDERS** the following:

1. The Court certifies the injunctive relief portion of the proposed class action under Rule 23(b)(2) and the monetary damages portion under Rule 23(b)(3). The following class is **CERTIFIED**:

> All individuals who, between August 2, 2014, to March 31, 2015, inclusive (the "Class Period"), participated in an inbound telephone conversation with a live representative of ECMC that was: (1) placed to an ECMC phone line that used the non-mandatory message setting for its admonition that the call is being recorded; (2) made from a telephone number that includes a California area code (i.e., 209, 213, 310, 323, 408, 415, 424, 442, 510, 530, 559, 562, 619, 626, 650, 657, 661, 707, 714, 760, 805, 818, 831, 858, 909, 916, 925, 949, or 951); (3) transmitted via cellular telephone; and (4) recorded without the caller's consent.[5]

---

[5] Excluded from the class are the following persons: (1) any Judge or Magistrate Judge presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and its current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

2.      Plaintiff AJ Reyes is appointed class representative.

3.      Pursuant to Federal Rule of Civil Procedure 23(g), the Law Offices of Ronald A. Marron is appointed as class counsel.

4.      Pursuant to Federal Rule of Civil Procedure 23(c)(2)(B), the parties shall meet and confer, and submit to the Court an agreed-upon form of class notice that will advise individual members of, among other things, the nature of the action, the relief sought, the right of class members to intervene or opt out, and the binding effect of a class judgment on members under Rule 23(c)(3). The parties shall also jointly submit a plan for dissemination of the proposed notice. The proposed notice and plan of dissemination shall be filed with the Court on or before **October 17, 2017**.

**IT IS SO ORDERED.**

**DATED: September 19, 2017**

**Hon. Cynthia Bashant**
**United States District Judge**