UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Beheshta MAHBOOB, on behalf of herself and all others similarly situated,<br><br>                    Plaintiffs,<br><br>  v.<br><br>EDUCATIONAL CREDIT MANAGEMENT CORP.,<br><br>                    Defendant. | Case No.: 15-cv-0628-TWR-AGS<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO STAY (ECF 166)** |

Defendant moves for a stay until the California Supreme Court decides *Smith v. LoanMe, Inc.*, Case No. S260391. Because a stay would simplify the issues with minimal prejudice to plaintiff, the Court grants defendant's request.

## BACKGROUND

Defendant Educational Credit Management Corporation allegedly recorded its phone conversations with plaintiff without consent. (ECF 1, at 2-3). Plaintiff sued ECMC for unlawful privacy-invasion under California Penal Code section 632.7, which is the sole remaining claim in this putative class action. (ECF 153, at 11.)

In 2019, the California Court of Appeal ruled that section 632.7 only applies to third-party eavesdroppers and "does not prohibit the participants in a phone call from intentionally recording it." *Smith v. LoanMe, Inc.*, 43 Cal. App. 5th 844, 848 (2019), *rev.*

1

*granted*, No. S260391, 2020 WL 1608928, at *1 (Cal. Apr. 1, 2020). This holding conflicts with another Court of Appeal decision, which concluded that section 632.7 prohibits recording communications without consent "no matter the particular role or degree of participation that a party has in the communication." *See Gruber v. Yelp Inc.*, 55 Cal. App. 5th 591, 608 (2020). Unsurprisingly, the California Supreme Court granted review of *Smith* to settle the issue. *See Smith*, 2020 WL 1608928, at *1. If the California Supreme Court affirms *Smith*, section 632.7 would not apply to call-participant ECMC, dooming plaintiff's only cause of action. So, ECMC seeks to stay this case until *Smith* is resolved. (ECF 166, at 6-7.)

## DISCUSSION

"A district court has discretionary power to stay proceedings." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005). And a case may be stayed "pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). For any stay request, the Court must weigh: (1) "the possible damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party may suffer in being required to go forward"; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer*, 398 F.3d at 1110.

**A.  Prejudice to Plaintiff from Granting Stay**

Plaintiff fears that a stay would lead to lost evidence and delay needed injunctive relief. Regarding evidence loss, plaintiff worries about the "memory of witnesses fading," defendant's "company turnover," and "potential destruction" of information. (ECF 170, at 17.) The generic "risk of lost evidence is inherent in every stay." *Burnell v. Swift Transp. Co.*, No. EDCV1000809VAPOPX, 2011 WL 13352810, at *5 (C.D. Cal. Jan. 20, 2011). But that risk is slight here. First, a stay in this case would not be "tantamount to an 'indefinite' stay, because the California Supreme Court has internal procedures to ensure timely management of its docket." *Id*. at *3 (quotation marks omitted). More importantly, plaintiff already conducted five years of extensive formal discovery, which vastly reduces

the danger of lost evidence. *See id*. at *5 (finding the risk from a stay to be "mitigated considerably" because plaintiffs "already have received some informal discovery.").

Plaintiff's other argument—that the class and the "public at large" badly need injunctive relief (ECF 170, at 20)—is also unpersuasive. Generally, a prayer for injunctive relief weighs heavily against a stay if the plaintiff is suffering ongoing harm or "if there is even a fair possibility that the stay . . . will work damage to some[]one else." *See Lockyer*, 398 F.3d at 1112 (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). But if the harm is only in the past, an injunctive-relief claim does not prevent a stay. For example, in *Reynolds v. Geico Corp.*, No. 2:16-CV-01940-SU, 2017 WL 815238 (D. Or. Mar. 1, 2017), the Court granted a stay despite an injunction request in a Telephone Consumer Protection Act case, because there was little proof of ongoing harm. *Id*. at *4. Plaintiff had not received an offending text from defendant for over six months, and the Court noted that "nothing suggests that plaintiff is in jeopardy of receiving additional text messages." *Id*.

As in *Reynolds*, there is no ongoing harm here. ECMC claims that "the inadvertent setting at issue in this case was corrected . . . [over five years ago] on April 1, 2015," and there is "no evidence" that the problem has recurred. (ECF 173, at 9.) On the other hand, plaintiff argues that injunctive relief is still necessary because ECMC's fix of their phone-system glitch "could be easily abandoned or altered in the future." (*See* ECF 170, at 18-20.) But this argument conflates the availability of a final remedy with ongoing harm. Just because injunctive relief is available does not mean the harm persists. The only ongoing harm that plaintiff identifies is that the class will not be "made whole as rapidly as possible." (*Id*. at 20.) That is not enough. "Delay in monetary relief alone is not a sufficient basis to deny a stay." *Grendene USA, Inc. v. Brady*, No. 3:14-CV-2955-GPC-KSC, 2015 WL 4606261, at *4 (S.D. Cal. July 30, 2015). So, the first factor favors granting the stay.

**B.      Prejudice to Defendant from Denying Stay**

"[D]efend[ing] a suit, without more, does not constitute a clear case of hardship or inequity." *Lockyer,* 398 F.3d at 1112 (quotation marks omitted). But when a case-

dispositive issue is pending before a supreme court, "[p]reparing for trial without a clear answer" causes potentially "unnecessary work" and "amount[s] to a hardship." *Goro v. Flowers Foods, Inc.*, No. 17-CV-2580 JLS (JLB), 2020 WL 804841, at *3 (S.D. Cal. Feb. 18, 2020). The hardship is even more severe when the case is a "putative class action," forcing defendant to "incur expenses above and beyond the costs of two-party litigation, such as the cost of class discovery and costs incurred to oppose class certification." *Del Rio v. Creditanswers, LLC*, No. 10CV346-WQH BLM, 2010 WL 3418430, at *4 (S.D. Cal. Aug. 26, 2010).

The pending *Smith* decision could end this case. After all, federal courts "are bound to follow the decisions of the state's highest court" when interpreting state law. *See Salazar v. McDonald's Corp.*, 944 F.3d 1024, 1029 (9th Cir. 2019). Meanwhile, plaintiff recently moved to certify the class. (ECF 201.) The expense of opposing a potentially moot class-certification motion constitutes a hardship that favors a stay.

## C.  Orderly Course of Justice

Finally, a stay would conserve judicial resources. Even if the California Supreme Court ultimately overturns *Smith*, it would resolve a central legal issue—whether section 632.7 applies to participants—that has split the California appellate courts. So, no matter the outcome, it will simplify the "issues, proof, and questions of law." *See Lockyer*, 398 F.3d at 1110.

Yet plaintiff argues that a stay is unnecessary because this Court can "interpret state law itself," predicting how the California Supreme Court would rule. (ECF 170, at 8.) And plaintiff opines that it is "extremely likely that the California Supreme Court will apply [section 632.7] to further telephone privacy." (*Id.* at 14.) This Court nonetheless joins the other federal courts that have rejected such a speculative exercise. *See, e.g.*, *Erceg v. LendingClub Corp.*, No. 20-CV-01153-HSG, 2020 WL 4340173, at *4 (N.D. Cal. July 28, 2020) ("It would be a waste of judicial resources to try to guess . . . how the California Supreme Court will decide [*Smith*]," which "easily could be determinative of Plaintiff's claims . . . ."); *Brinkley v. Monterey Fin. Servs., LLC*, No. 16-CV-1103-WQH-WVG, 2020

WL 1929023, at *5-6 (S.D. Cal. Apr. 21, 2020) (staying the case to avoid "expend[ing] unnecessary time and resources" litigating issues when the *Smith* decision will have "a decisive effect on the viability" of plaintiff's claim); *Saunders v. Sunrun, Inc.*, No. 19-CV-04548-HSG, 2020 WL 4601636, at *6 (N.D. Cal. Aug. 11, 2020) (staying the case and holding that it "would be a waste of judicial resources to assume how the California Supreme Court will decide the issues" in *Smith*); *Franklin v. Ocwen Loan Servicing, LLC*, No. 18-CV-03333-SI, 2020 WL 3316058, at *2 (N.D. Cal. June 18, 2020) (staying the case and noting that "the Supreme Court's decision will determine whether plaintiff's claim is viable at all, let alone on a class basis"); *CS Wang & Assoc. v. Wells Fargo Bank, N.A.*, No. 16 C 11223, 2020 WL 5297045, at *5 (N.D. Ill. Sept. 4, 2020) (staying the case, in part, because a "decision by the California Supreme Court affirming *Smith* would . . . likely be dispositive of Plaintiff's § 632.7 claims").

A decision affirming *Smith* would significantly narrow, or even eliminate, plaintiff's sole cause of action. Even if this possibility were remote, the outcome's inherent uncertainty warrants staying the proceedings to promote judicial economy.

## CONCLUSION

Because all three factors favor it, the Court **GRANTS** defendant's motion to stay these proceedings until the California Supreme Court resolves *Smith v. LoanMe, Inc.*, No. S260391. The Court further orders:

1. <u>Status Reports</u>: ECMC must file periodic status reports on the state court proceedings. ECMC must file such a report on March 1, 2021, and every three months thereafter (that is, June 1, 2021; September 1, 2021; etc.).

2. <u>Notice of *Smith* Resolution</u>: The parties must jointly file a notice within seven calendar days of the California Supreme Court's resolution of *Smith*. In that notice, the parties must include a recommended schedule for all remaining dates. After this seven-day period, the stay will be lifted, and proceedings will resume.

Dated: December 21, 2020

Hon. Andrew G. Schopler
United States Magistrate Judge

5

15-cv-0628-TWR-AGS